Filed 3/21/17 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| EMERALD AERO, LLC, <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> STEPHEN KAPLAN, <br><br> Defendant and Appellant. | D070579 <br><br> (Super. Ct. No. 37-2012-00057479-CU-BC-NC) <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING <br><br> **NO CHANGE IN JUDGMENT** |

THE COURT:

The petition for rehearing is DENIED.

It is ordered that the opinion filed on February 28, 2017 be modified to add the following paragraphs beginning on page 25, immediately before the Conclusion:

Lastly, we consider plaintiffs' contention that Kaplan waived his right to appeal the judgment confirming the arbitration award. Plaintiffs rely on the portion of the parties' arbitration agreement stating the parties are "GIVING UP ANY RIGHTS [THEY] MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR

JURY TRIAL.  BY EXECUTING THIS AGREEMENT, EACH PARTY HERETO IS GIVING UP ITS OR HIS JUDICIAL RIGHTS TO DISCOVERY AND APPEAL."

California courts enforce contractual provisions waiving a party's right to appeal a judgment on an arbitration award.  (See *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 952 (*Guseinov*); *Pratt v. Gursey, Schneider & Co.* (2000) 80 Cal.App.4th 1105, 1108-1109 (*Pratt*).)  But they do so only if this intent is "clear and explicit."  (*Ruiz v. California State Automobile Assn. Inter-Insurance Bureau* (2013) 222 Cal.App.4th 596, 604; accord, *Guseinov*, at p. 952 ["waiver should be clear and express"].)

Reasonably read, the cited language of the parties' arbitration agreement does not show Kaplan waived his right to appeal on the limited judicial review grounds provided in the arbitration statutes.  "[G]enerally, a contract provision stating that arbitration is 'non-appealable' signifies that the parties to the contract may not appeal the merits of the arbitration; not that the parties agree to waive a right to appeal the . . . judgment confirming or vacating the arbitration decision."  (*Southco, Inc. v. Reell Precision Mfg. Corp.* (3d Cir. 2009) 331 Fed. Appx. 925, 927, italics omitted.)  This principle applies here.  Although the parties unambiguously gave up their rights to litigate the matter in a judicial forum, including their *judicial* appellate rights, they did not explicitly waive their rights to the limited judicial review provided under the arbitration statutes, which encompass the right to appeal a final judgment on these matters.  (See § 1294.)  The waiver of "*judicial rights* to discovery and appeal" is not sufficiently specific to waive the right to challenge a judgment confirming an arbitration award.  (Capitalization omitted and italics added; see *Guseinov, supra*, 145 Cal.App.4th at pp. 952-955 [no explicit

2

waiver of appellate rights to challenge judgment on arbitration award where parties agreed only to " 'waive any right to appeal the arbitral award' "]; *Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, 1082, 1088-1089 (*Reisman*) [no waiver of appellate rights to challenge judgment confirming arbitration award under agreement that " 'once the arbitrators have rendered an award, no appeal or further proceeding will be possible' "].)

In the arbitration clause, the parties expressly agreed to "have any dispute . . . decided by neutral arbitration as *provided under applicable law*." (Capitalization omitted; italics added.) Applicable law provides for limited judicial review of arbitration awards through the statutory confirmation/vacation procedures, and for the right to appeal the ensuing judgment. (§§ 1285-1287.2, 1294.) By agreeing to arbitrate their dispute under California law without explicitly waiving their rights under this law, the parties manifested their understanding that they had retained their appellate rights to challenge the final judgment. (See *Guseinov, supra*, 145 Cal.App.4th at pp. 954-955.)

Plaintiffs' reliance on *Pratt, supra*, 80 Cal.App.4th 1105 is misplaced. In *Pratt*, the parties stipulated "the right to appeal from the arbitrator's award *or any judgment thereby entered or any order made is expressly waived*." (*Id.* at p. 1107, italics added.) The Court of Appeal found this language "constituted an express waiver of the right to secure appellate review" (*id.* at p. 1108) because the contractual provisions "involve[d] specific waiver of the right to appeal '*any* judgment' or '*any* order' " (*id.* at p. 1111, italics added). This type of explicit language was missing here. As have other California courts, we decline to find a forfeiture without the parties' express manifestation of intent to waive their appellate rights to challenge a judgment on an arbitration award. (See

3

*Guseinov, supra*, 145 Cal.App.4th at pp. 952-955; *Reisman, supra*, 153 Cal.App.3d at pp. 1088-1089.)[1]

**There is no change in the judgment.**

McCONNELL, P. J.

Copies to:  All parties

---

[1]    Plaintiffs also rely on language in a Ninth Circuit decision, *Aerojet-General Corp. v. American Arbitration Assn.* (9th Cir. 1973) 478 F.2d 248.  However, the Ninth Circuit has since explicitly rejected *Aerojet-General* on the cited point and held that parties cannot contractually eliminate the limited judicial review or their appellate rights to challenge arbitration judgments under the Federal Arbitration Act.  (*In re Wal-Mart Wage & Hour Empl. Practices Litig.* (9th Cir. 2013) 737 F.3d 1262, 1265-1268 & fn. 8.)

4

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EMERALD AERO, LLC, et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>STEPHEN KAPLAN,<br><br>    Defendant and Appellant. | D070579<br><br><br><br>(Super. Ct. No. 37-2012-00057479-<br> CU-BC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge. Reversed with directions.

Smaha Law Group, John L. Smaha, Kristen Marquis Fritz, and John Paul Teague, for Defendant and Appellant.

Horwitz + Armstrong, John R. Armstrong and Matthew S. Henderson, for Plaintiffs and Respondents.

Stephen Kaplan appeals from a judgment confirming a $30 million arbitration award against him. Although the award does not specify the nature of the damages, the parties agree a substantial portion of the award consists of punitive damages. The arbitrator issued the award after a hearing which Kaplan elected not to attend. We

conclude the judgment must be reversed. The arbitrator exceeded his authority by awarding punitive damages without adequate prior notice to Kaplan, in violation of the parties' arbitration agreement and fundamental procedural fairness principles.

OVERVIEW

This matter arose when several investors (plaintiffs[2]) sued Kaplan and a limited liability company (referred to as Houston LLC[3]) alleging defendants breached fiduciary duties pertaining to plaintiffs' investment in a self-storage facility located in Texas. Plaintiffs sought compensatory damages and declaratory relief, but did not seek punitive damages. After the court granted defendants' unopposed motion to compel the matter to private arbitration, the arbitration hearing was stayed while Kaplan was criminally prosecuted for his conduct in soliciting and handling investments in self-storage facilities, including the property at issue in plaintiffs' lawsuit.

After Kaplan pled guilty to a wire fraud charge in the criminal action but before his sentencing hearing, a telephonic arbitration hearing was scheduled. The parties had about two and one-half weeks' notice of the hearing date. On the day before the hearing, plaintiffs emailed a brief substantially increasing their original arbitration damages claim and requesting punitive damages for the first time. Defendants did not appear at the hearing. After the telephonic hearing, the arbitrator awarded plaintiffs $30,835,152.57,

---

[2]    Plaintiffs are Emerald Aero, LLC; NCHF AMS II Houston, LLC; JWC AMS II Houston, LLC; and Scott Rogers.

[3]    The full name of this defendant is AMS II Houston Investments Management, LLC.

without specifying the grounds or nature of the award. Kaplan then requested that the arbitrator vacate or modify the award, but the assigned arbitrator recused himself from all further arbitration proceedings and the arbitration administrator declined to reassign the case.

In the superior court, Kaplan moved to vacate the award, and plaintiffs moved for an order confirming the award. The court denied Kaplan's motion to vacate, and entered judgment of $30,835,152.57 against defendants.

In challenging the judgment on appeal, Kaplan recognizes courts have limited authority to review arbitration awards, but contends the court erred in confirming the award based on several statutory exceptions to this rule. (See Code Civ. Proc., § 1286.2, subd. (a)(1), (3), (4).)[4] We agree with one of these arguments. We determine the superior court erred in entering judgment on the award because the arbitrator "exceeded [his] powers" by issuing an award that violated applicable arbitration rules and procedural fairness principles. (§ 1286.2, subd. (a)(4).) Specifically, less than 24 hours before the arbitration hearing, plaintiffs notified Kaplan for the first time they were seeking punitive damages. Plaintiffs did so by requesting punitive damages in a late-filed arbitration brief attached to an email sent to the arbitrator and copied to Kaplan (who was not represented by counsel at the time). This notice violated the parties' arbitration agreement because it was not reasonably calculated to inform Kaplan of the punitive damages claim and precluded a fair arbitration proceeding. The notice defects were also

---

[4] All unspecified statutory references are to the Code of Civil Procedure.

compounded by other procedural irregularities in the arbitration process. The arbitrator acted beyond his authority.

The applicable code section provides that when an arbitrator issues an award beyond his authority and there is no basis to correct the award without affecting the merits of the decision, the arbitration award must be vacated. (§ 1286.2, subd. (a)(4).) These circumstances occurred here. Accordingly, we reverse the judgment confirming the award against Kaplan, with directions for the superior court to enter an order vacating the arbitration award as to Kaplan and remanding the matter for a new arbitration hearing on damages.

The second defendant, Houston LLC, did not file a notice of appeal or appear in this action, nor has any counsel appeared on its behalf. Kaplan nonetheless seeks to assert arguments on its behalf. We have no jurisdiction to consider these arguments, and thus the judgment remains as to Houston LLC, which is not a party to this appeal. (See *Van Buerden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56; *Caressa Camille, Inc. v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 1094, 1102.)

FACTUAL AND PROCEDURAL SUMMARY

Because the legal issues involve procedural fairness of the arbitration proceeding and the parties disagree about the procedural facts leading to the arbitration hearing, it is necessary that we set forth those facts in some detail. We describe only the facts

4

contained in the appellate record, viewing those facts in the light most favorable to plaintiffs.[5]

In September 2012, plaintiffs (individually and on behalf of certain involuntary plaintiffs) sued Kaplan and Houston LLC alleging these defendants breached duties in managing a self-storage facility in which plaintiffs had invested substantial funds. Plaintiffs alleged defendants engaged in "schemes to redirect benefits intended to go to Plaintiffs and [other] investors" and obtained "unfair financial benefits."  Based on these and other allegations, plaintiffs asserted causes of action for (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; and (3) quiet title.  On the first two causes of action, plaintiffs sought "actual and consequential damages in excess of $10,000,000.00 to be proven at trial."  There was no mention of punitive damages in the complaint.

The parties' contract contained an arbitration provision requiring "binding arbitration" under American Arbitration Association (AAA) rules, in which the parties agreed to give up their rights to a "court or jury trial" and to "discovery and appeal."

---

5    We grant Kaplan's motion to strike the portion of the Respondents' Appendix containing documents never submitted in the trial court, and the related references to these documents.  (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *The Termo Co. v. Luther* (2008) 169 Cal.App.4th 394, 404; see also Cal. Rules of Court, rule 8.124(g).)  Relying on California Rules of Court, rule 8.124(b)(4), plaintiffs argue the documents are properly before us because they were exhibits provided to the arbitrator.  This rule applies to exhibits admitted, refused or lodged *in the trial court.*  The rule does not change the settled principle that an appellate court reviews only matters that were part of the trial court record.  In any event, these documents are irrelevant to the matters before us.  Kaplan is not asking this court to review the merits of the claims or defenses, and we have not done so.

(Capitalization omitted.)  Based on this provision, defendants filed an unopposed motion to compel arbitration.  In March 2013, the superior court ordered the matter to arbitration.

About 10 months later, in January 2014, plaintiffs submitted a request to the AAA "to have a case opened . . . ."  In the attached "**CLAIM SUMMARY**" form, plaintiffs identified "[$]1,000,000.00" as the "Claim Amount."  In the "Claim Description," plaintiffs stated:  "Plaintiffs base their claim as . . . outlined in [their] complaint . . . which includes allegations of fraud, breach of fiduciary duty and aiding and abetting.  For money damages Plaintiffs have reasonably incurred to clear the cloud on Plaintiffs['] title to the Property and to prevent the sale of the Property by Defendants and such other damages to be proved at arbitration.  Prejudgment interest . . . at the applicable legal rate, for the costs of suit herein [including] attorney fees, and any and all penalty damages and other remedies available in law and equity.  Please see the attached document entitled 'Complaint' for the facts and allegations of this claim."

After an arbitrator was appointed, the arbitrator issued an order stating:  (1) "The complaint will be treated as the claim," and all allegations in the complaint are deemed denied; and (2) "The [AAA] Commercial Arbitration Rules dated October 1, 2013 will be used in this case."[6]

---

[6]   On our own motion, we take judicial notice of this version of the AAA Commercial Arbitration Rules.  (See Evid. Code, § 452, subd. (h); *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505, fn. 6; *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, fn. 1.)  All further "AAA rule" references will be to this version of the AAA rules.

In about August 2014, Kaplan's attorney (Daniel Levinson) moved for a stay of the arbitration proceedings, asserting an arbitration of the civil case would conflict with potential federal criminal proceedings against Kaplan (and Kaplan's father and brother) involving their management of self-storage properties, including the facility at issue in plaintiffs' case. Kaplan's counsel argued that Kaplan's right to assert his privilege against self-incrimination would preclude him from fully defending himself in the civil proceeding. Plaintiffs opposed the stay.

At about the same time, the assigned arbitrator disclosed a possible conflict and was replaced by arbitrator Peter Shenas (hereinafter referred to as the Arbitrator).

On November 13, 2014, the Arbitrator granted Kaplan's stay motion. The order stated the arbitration proceedings would be stayed "until February 2, 2015."

Five months later, on April 21, 2015, plaintiffs' attorney sent an email to the AAA administrator (without copying Kaplan or Kaplan's counsel), stating: "This matter was stayed in November 2014 due to a related criminal investigation by the attorney general's office. Since that time, the criminal investigation has concluded and Defendant Kaplan has entered a guilty plea. Thus [plaintiffs] request that the stay in this matter [be] lifted and the action allowed to proceed forward. Please advise when we may hold a status conference with the arbitrator."

Later that day, the AAA administrator emailed plaintiffs' counsel, with a copy to Kaplan's attorney (Levinson), stating: "I have requested [the Arbitrator's] availability, but I request that you please include opposing counsel on all communications with AAA."

7

About three weeks later, on May 8, the Arbitrator held a telephonic scheduling hearing. Plaintiffs' counsel appeared, but there was no appearance on behalf of defendants. The record does not show that Kaplan or his attorney were provided notice of this hearing.

Three days later, on May 11, the Arbitrator signed an order setting deadlines for the exchange of witness lists and exhibits and the filing of (optional) briefs. The order stated that an evidentiary hearing "shall commence at 10:00 a.m. on June 9, 2015" at the Arbitrator's law offices. The record does not show this order was served on Kaplan or his counsel.

One week later, on May 18, the AAA administrator sent a notice to plaintiffs' counsel and Kaplan's counsel (Levinson) that an evidentiary hearing was scheduled for June 9, 2015. This order did not mention the exchange-of-documents requirement.

Later that evening, Levinson emailed the Arbitrator and plaintiffs' counsel stating he would no longer be representing Kaplan and he was withdrawing as counsel. Levinson stated that "[c]ommunication to . . . Kaplan and/or [Houston LLC] may be directed to Mr. Kaplan at [a specified email address]." Plaintiffs' counsel objected to the withdrawal, stating he had "already overnighted our arbitration documents to Mr. Levinson . . . ." The record contains a proof of service showing that plaintiffs sent their witness list and copies of documents to Levinson by overnight mail on May 18.

On May 21, the Arbitrator issued an order vacating the June 9 scheduled arbitration hearing, and requesting the parties to file written briefs on the issue of Levinson's motion to be relieved as Kaplan's attorney. In response, plaintiffs' counsel

8

sent an email to the AAA administrator (with copies to Levinson and the Arbitrator), stating that plaintiffs no longer had any objection to the withdrawal and requesting the Arbitrator to grant Levinson's motion and reschedule the hearing on the original June 9 date.

One week later, on May 27, the Arbitrator signed a new order stating: "1. If attorney Levinson seeks to be relieved as attorney . . . , he shall file a motion to be relieved, or in the alternative, the parties may stipulate in writing that he may be relieved, and name a successor attorney, if any. [¶] 2. The previously scheduled evidentiary hearing date of June 9, 2015 was vacated by order of the [A]rbitrator dated May 21, 2015. Either of the parties may file a motion requesting a new hearing date, or the parties may stipulate to a new hearing date after clearing the date with the [AAA]."

On May 28, the AAA administrator emailed this order to plaintiffs' counsel, attorney Levinson, and Kaplan.

Five minutes after receiving this order, plaintiffs' counsel emailed the AAA administrator, Levinson, Kaplan, and the Arbitrator, stating: "Claimants stipulate to whoever respondents want as their new counsel. [¶] Further, by this email, claimants move for a new hearing date at the earliest opportunity. [¶] For the record, claimants continue to object, for the reasons stated in their last two correspondences regarding the 'de facto' motion for continuance occasioned by Mr. Levinson's belated effort to withdraw as counsel of record. That is, justice delayed continues to be justice denied, and the procedural record here indicates undue delay."

9

Several weeks later, on June 12, the AAA administrator forwarded an email to Levinson, Kaplan, and plaintiffs' counsel, containing the following note from the Arbitrator: " 'On 5/28/15 at 3:22 p.m.[,] [plaintiffs' attorney] sent a message stating:  'by this e-mail, claimants move for a new hearing date at the earliest opportunity'.  [¶] [Plaintiffs' counsel] is hereby ordered to file a motion, pursuant to, and in accordance with, AAA rules, seeking any relief that he may be seeking.  Unless, and until, such motion is filed, no action will be taken by the Arbitrator to rule on [plaintiffs'] request for a hearing date."

The next month, on July 9, plaintiffs sent an email to the AAA administrator and to Kaplan's email address, requesting the Arbitrator "to set the default prove up in the matter."  The email attached a motion entitled "Petitioners' Motion to Set Hearing on Default Prove Up against [Kaplan]."  In the motion, plaintiffs asked the Arbitrator to schedule a one-day "prove-up" hearing on a date between July 21 and August 15.  Plaintiffs said that because defendants had not appeared at the earlier scheduling conference and had not "participated in pre-hearing discovery or disclosures," they should be "barred from presenting evidence" at the hearing.  Plaintiffs claimed they had timely provided their evidence, and "no participation is expected from any of the [Defendants]—especially in that . . . Kaplan is presently awaiting sentencing for federal crimes related to the same multi-state fraudulent real estate scheme. . . . "  Plaintiffs stated they would "present their case by and through a detailed arbitration brief and brief witness testimony to walk the arbitrator through the documents."

Although he was served by email with this motion, Kaplan did not respond.

10

Several weeks later, on July 22, the AAA issued a Notice of Hearing, stating an evidentiary hearing ("In-Person") would be held on August 3, 2015 at the Arbitrator's office. It does not appear that this notice was served on the parties, and none of the parties appeared at this hearing.

The next month, on August 13, the AAA sent a new Notice of Hearing to Kaplan's home address and to plaintiffs' counsel's email address stating that an evidentiary telephonic hearing would take place on September 1, 2015 at 2:00 p.m. The Notice provided a call-in number and pass code. Kaplan did not respond to this notice, including by seeking a continuance or stay of this hearing date.

On August 31, one day before the scheduled hearing, at 4:38 p.m. plaintiffs' counsel sent an email to the AAA administrator with a "cc" to the Arbitrator and to Kaplan, stating: "Attached please find [plaintiffs'] default prove up brief for tomorrow's hearing along with a supporting declaration and proof of service." In this new brief, plaintiffs requested $10,278,384.19 in damages, consisting of their initial investment (about $2.3 million), plus claimed lost "[f]uture" and "[p]rojected" profits, and fees and costs. Additionally, for the first time, plaintiffs sought punitive damages based on Kaplan's alleged "deplorable, despicable, repugnant, and immoral conduct." Plaintiffs requested a "multiplier of three (3x) the actual damages."

The next day, on September 1, a telephonic arbitration hearing was held. Defendants did not appear at the hearing, or provide any written response. During the hearing (which was not transcribed), plaintiffs presented their evidence and referenced their arbitration brief.

11

About two weeks later, on September 19, the Arbitrator signed a "Final Award," stating: "Whereas, the default evidentiary hearing in this matter was held telephonically . . . before Arbitrator Peter Shenas, and [¶] Whereas, appearing at the hearing telephonically was [plaintiffs' attorney]. [¶] . . . [¶] . . . [Plaintiffs] are . . . awarded damages against Respondents in the amount of $30,835,152.57. [¶] . . . This award is in full settlement of all claims submitted to this Arbitrator. All claims not expressly granted herein are . . . denied."

Several days later, the AAA administrator requested plaintiffs' counsel to send additional arbitration fees, stating that plaintiffs had paid their arbitration fee based on their "original[ ]" $1 million claim amount, but "[plaintiffs'] arbitration brief request[ed] an award in the amount of $10,278,384.19 plus punitive damages," which required higher fees. Based on the last-minute increase in plaintiffs' claim, the administrator stated that plaintiffs were responsible for an additional fee charge of $11,327.84 applicable to claims more than $10 million. Plaintiffs complied with this request by paying the additional fees.

Shortly after, on November 10, the Arbitrator issued an amended Final Award to clarify that the award was against only two defendants (Kaplan and Houston LLC). The amendment was in response to a request from a third party who was originally named on the complaint, but had been dismissed early in the proceedings.

Two weeks later, Kaplan's new attorney filed a motion with the AAA requesting the Arbitrator to set aside the amended Final Award based on facts showing: (1) Kaplan lacked notice that plaintiffs would be seeking punitive damages; and (2) Kaplan had been

12

advised by his criminal defense counsel not to testify in the civil case until his sentencing/restitution hearing was completed.

In their opposition to the motion, plaintiffs argued the motion was untimely and the Arbitrator had no power to redetermine the merits of the award. Plaintiffs also asserted Kaplan's arguments were without merit because (1) plaintiffs provided notice of their punitive damages claim by emailing Kaplan a copy of the arbitration brief on the day before the arbitration hearing; and (2) defendants never asked for the hearing to be continued.

About two weeks later, the AAA administrator wrote to the parties that it had sent all motion papers to the Arbitrator, and that the Arbitrator's office had notified the AAA that the Arbitrator "is recusing himself from all AAA matters." The administrator stated no further action would be taken on Kaplan's motion because the AAA "has no authority to vacate and/or modify an arbitrator's award," except for "computational, clerical or typographical" errors.

Kaplan's counsel then requested that the AAA appoint a new arbitrator to hear the pending motion. The AAA administrator declined this request, noting the matter was now within the "purview of the [c]ourt."

The parties then filed motions in the superior court. Plaintiffs earlier had moved to confirm the award, and Kaplan moved to vacate the award. In his motion to vacate and in his opposition to the motion to confirm, Kaplan argued the award lacked due process and exceeded the Arbitrator's powers on various grounds, including that it went beyond the submitted issues and provided unauthorized remedies. Kaplan argued he was

13

unaware plaintiffs would request punitive damages at the arbitration hearing, and asserted the Arbitrator erred by conducting the proceeding while his criminal sentencing hearing was pending.

In response, plaintiffs argued the Arbitrator's determination was final and binding, and the court had no authority to review the merits of the decision. Plaintiffs also asserted they gave Kaplan adequate notice of the proceedings and issues by mailing copies of their exhibits to Kaplan's attorney on May 18 and by emailing a copy of their arbitration brief to Kaplan on the day before the arbitration hearing.

In reply, Kaplan contended the arbitration brief did not provide him with reasonable notice he would be subject to "30 times" the "original claim in arbitration." In his supplemental declaration, Kaplan said his criminal defense counsel had advised him not to testify in the civil matter until after the sentencing hearing, and he had assumed the arbitration had "remained stayed." Kaplan also submitted evidence showing at the sentencing hearing the criminal court had imposed only a one-day custody sentence, with a three-year supervised release and a $100 assessment.

After reviewing the parties' submissions and conducting a hearing, the court denied Kaplan's petition to vacate the arbitration award. The court rejected Kaplan's argument that he did not have notice of plaintiffs' punitive damages claim, citing plaintiffs' arbitration brief that was attached to the email sent to Kaplan the day before the hearing. Regarding Kaplan's argument that the Arbitrator "unfairly refused to postpone the hearing by extending the stay through sentencing," the court stated: "[Kaplan] did not object to the arbitration being re-activated, made no attempt to show good cause to

14

continue the stay; and has failed to show any resulting prejudice from the lifting of the stay. The stay was in effect until Feb. 2, 2015. While it is not clear whether [Kaplan] was given notice of Plaintiffs' April 2015 request to lift the stay, the fact is that the stay had already expired by that time and [Kaplan] had taken no action to extend it." The final judgment awarded plaintiffs $30,835,152.57 against Kaplan and Houston LLC.

## DISCUSSION

California's statutory scheme regulating private arbitration reflects a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380 (*Haworth*); *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) Absent an express agreement to the contrary, a court has no authority to "review the merits of the controversy, the validity of the arbitrator's reasoning or the sufficiency of the evidence supporting the arbitrator's award." (*Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 887 (*Hoso*); accord, *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*); *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1339.) By obtaining the many benefits of private arbitration, the parties to an arbitration agreement accept the risk of "an erroneous decision by the arbitrator." (*Haworth, supra*, at p. 380; *Moncharsh, supra*, at pp. 11-12, 28.)

Section 1286.2 sets forth exceptions to this general rule of nonreviewability. By enacting these exceptions, the Legislature sought to permit judicial review when the circumstances show " 'serious problems with the award itself, or with the fairness of the arbitration process.' " (*Haworth, supra*, 50 Cal.4th at p. 380; see *Hoso, supra*, 190

15

Cal.App.4th at pp. 888-889.) In challenging the trial court's confirmation of the award, Kaplan relies on several of these exceptions.

First, Kaplan relies heavily on section 1286.2, subdivision (a)(5), which provides a court shall vacate an arbitration award if: "The rights of the parties were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor . . . ." Kaplan maintains he was substantially prejudiced because the Arbitrator refused to continue the hearing until his criminal sentencing hearing was completed. However, Kaplan never asked for a stay or a continuance after the expiration of the prior stay, nor did Kaplan notify the Arbitrator of his position that the arbitration would conflict with his sentencing hearing. The Arbitrator had no duty to continue the hearing on the Arbitrator's own motion. The statutes provide that an arbitrator may hold a hearing in the absence of a party, if the party "has been duly notified" to appear at the hearing. (§ 1282.2.) The records show Kaplan was on notice of the hearing about 19 days before the hearing date, and he never objected to the hearing being held on that date. Accordingly, the section 1286.2, subdivision (a)(5) exception does not provide grounds for showing arbitrator or trial court error.

Kaplan also relies on section 1286.2, subdivision (a)(4), which provides: "the court shall vacate the award if the court determines. . . . [¶] . . . [¶] . . . [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." This exception is narrowly construed. Arbitrators do not exceed their powers by reaching erroneous factual or legal conclusions on the merits of the parties' claims, even if the award causes substantial injustice to one of

16

the parties.  (*Richey, supra*, 60 Cal.4th at p. 916; *Moncharsh, supra*, 3 Cal.4th at p. 6.)

This narrow-construction rule extends to an arbitrator's choice of remedy. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 366-367, 373-376 (*Advanced Micro Devices*).)  In private arbitrations, the parties have bargained for an arbitrator to exercise his or her "flexibility, creativity, and sense of fairness" in selecting a particular remedy.  (*Id.* at p. 374.)  "Were courts to independently reevaluate the merits of a particular remedy, the parties' contractual expectations . . . would be defeated."  (*Id.* at p. 375.)  Accordingly, an arbitrator generally "does not exceed his or her powers" when imposing a particular remedy if the remedy "bears a rational relationship" to the underlying claim or breach, even if the remedy could not have been awarded by a jury or court.  (*Id.* at p. 367.)

As applied to punitive damages, this rule generally prohibits a court from reviewing the merits of a punitive damages award, including for factual, legal, or constitutional error.  (See *Mave Enterprises v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408, 1434-1435 (*Mave*); *Shahinian v. Cedars-Sinai Medical Center* (2011) 194 Cal.App.4th 987, 1005-1008 (*Shahinian*); *J. Alexander Securities, Inc. v. Mendez* (1993) 17 Cal.App.4th 1083, 1091-1095 (*Alexander Securities*).)  Under this rule, federal due process restrictions applicable to punitive damages imposed by a jury or trial court (*State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, 416-419; *Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1171) do not apply to an arbitrator's punitive damages award (*Mave, supra*, at pp. 1437-1440; *Shahinian, supra*, at pp. 1006-1007; *Rifkind & Sterling, Inc. v. Rifkind* (1994) 28 Cal.App.4th 1282, 1288-

1293).  The courts reason that the constitutional due process clause applies only to state action, and arbitration is "a private proceeding, arranged by contract, without legal compulsion."  (*Rifkind, supra*, at p. 1291; accord, *Mave, supra*, at pp. 1438-1440.)  For similar reasons, the judicial rules prohibiting a court in a default proceeding from awarding damages greater than the amount identified in the pleadings (or a statutory statement of damages) (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826; *Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1294; § 425.115) do not necessarily govern in the arbitration context.

But a party is not without any grounds for challenging a punitive damages arbitration award.  "The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate."  (*Advanced Micro Devices, supra*, 9 Cal.4th at p. 375.)  Although " 'every intendment of validity must be given an arbitration award [citation], it is well settled that an arbitrator derives his power from the arbitration agreement and he cannot exceed his derived power.  [Citation.]  To confirm an arbitration award in excess of the powers granted by an arbitration agreement would destroy the very purpose of arbitration and be contrary to the sound policy of encouraging the settlement of private disputes by the voluntary agreement of the parties.' "  (*Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 532.)  Under these principles, a party may successfully challenge an arbitration award if the relief granted was in violation of "specific restrictions" (1) "in the arbitration agreement"; (2) "the submission" of the claim to the arbitrator; or (3) "the rules of arbitration."  (*Advanced Micro Devices, supra*, at p. 367.)

18

The first two restrictions do not apply in this case. The parties' arbitration agreement requires arbitration of "Any controversy arising out of or related to this Agreement or the breach or alleged breach thereof . . . ." This language provided the Arbitrator with the broad authority to rule on all claims, and impose any form of relief rationally related to those claims, including punitive damages. (See *Alexander Securities, supra*, 17 Cal.App.4th at pp. 1091-1092.) Likewise, the parties' arbitration submission did not preclude the arbitrator from awarding punitive damages. Although plaintiffs did not specifically identify punitive damages in the Arbitration Claim form, there was nothing in the submission preventing the Arbitrator from awarding those damages. "Absent an express and unambiguous limitation in the . . . submission to arbitration, an arbitrator has the authority to . . . award any relief rationally related to his or her factual findings . . . ." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182; see *Advanced Micro Device, supra*, 9 Cal.4th at p. 376.)

We reach a different conclusion regarding the "rules of arbitration" restriction. (*Advanced Micro Devices, supra*, 9 Cal.4th at p. 367.) The AAA rules were expressly incorporated into the parties' arbitration agreement and thus contractually limited the arbitrator's authority. (AAA rule 1(a).) The AAA rules provide the "arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." (AAA rule 47(a).) But the AAA rules also restrict the available remedies to those of which the parties had reasonable notice. Specifically, the AAA rules require a party to specify in his or her initial filing "the relief sought and the

19

amount involved," and require the parties to provide written notice of any changes to this claim information. (AAA rule 4(e)(iv).) Of particular relevance here, AAA rule 6 states:

"Changes of Claim

"(a) A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the arbitrator.

"(b) Any new or different claim or counterclaim, as opposed to an increase in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent."

Both subdivisions of AAA rule 6 require a party to notify the arbitrator and the opposing party of a changed or increased claim, but subdivision (b) contains stricter requirements—requiring at least 14 days' notice and an arbitrator's consent before a new or different claim may be submitted. In this case, plaintiffs changed their claim by adding a punitive damages request less than 24 hours before the arbitration hearing. We need not resolve whether this claim was a "new or different claim" under subdivision (b) or merely an "increase" in the claim amount under subdivision (a). Under both subdivisions of AAA rule 6, the rule requires written notice before a party could materially add to his or her arbitration claim, and an arbitrator has no authority to award amounts for a new punitive damages claim without this notice. (See *Alexander Securities, supra*, 17 Cal.App.4th at p. 1095 [rejecting challenge to punitive damages

20

arbitration award where "[a]ppellant does not claim that it did not have notice of respondent's claim for punitive damages . . ."]; see also *Mave, supra*, 219 Cal.App.4th at p. 1434 [emphasizing the fact of prior notice of requested damage item]; see also *Totem Marine Tug & Barge v. North American Towing* (5th Cir. 1979) 607 F.2d 649, 651-652 (*Totem Marine*) [arbitration award vacated where arbitrator awarded "an unrequested item of damages"].)

Plaintiffs do not dispute they were required to provide reasonable notice of their new punitive damages claim. But they say they did so by emailing Kaplan a copy of their arbitration brief on the day before the arbitration hearing. The trial court accepted this argument. We do not. In viewing the entirety of the record, this email did not satisfy the required notice under the AAA rules or under fundamental fairness principles. Reasonably understood, the notice required under AAA rule 6 means providing the opposing party with the time and opportunity to review and understand the contents of the notice, and the opportunity to respond to the notice. Under the circumstances here, attaching a brief to an email less than 24 hours before the merits hearing did not constitute notice calculated to apprise the opposing party of a new and substantially increased monetary claim, nor did it provide the opposing party with a fair opportunity to assert a challenge to the new punitive damage claim. Plaintiffs did not provide any information in the cover email regarding the substantially increased value of the claim (more than 30 times the initial Arbitration Claim amount and $20 million more than the amount claimed in the complaint), nor did the brief clearly highlight this information. At the time, plaintiffs and the Arbitrator were aware that Kaplan was unrepresented in the

21

case and was awaiting criminal sentencing, and that the arbitration hearing had been scheduled as a default "prove-up" hearing. Further, plaintiffs violated the Arbitrator's order requiring arbitration briefs to be submitted "no later than June 3, 2015."

Plaintiffs argue the late notice caused no prejudice because the record shows Kaplan had already decided not to appear at the hearing. However, the record also supports that if Kaplan had been provided reasonable prior notice that plaintiffs were seeking $30 million in punitive damages, he would have likely reconsidered this decision by retaining a new attorney or appearing at the hearing to at least notify the Arbitrator that punitive damages had never before been part of plaintiffs' claim. On the record before us, plaintiffs' counsel took unfair advantage of the situation by making a last-minute demand for more than $30 million in punitive damages. Given the lack of fair notice, the Arbitrator's decision to accept this claimed amount fell outside the Arbitrator's authority.

The arbitration process had other procedural shortcomings that also call into question the fairness of the damages award. Courts have long recognized the fundamental requirement that arbitrations be conducted in a fair and neutral manner. (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1108 ["the procedural flexibility of the arbitral forum does not override participants' fundamental, common law right to a fair proceeding"].) An arbitrator exceeds his powers by conducting an unfair proceeding. (*Hoso, supra*, 190 Cal.App.4th at p. 889.) Thus, "arbitration procedures that interfere with a party's right to a fair hearing are reviewable on appeal." (*Id.* at p. 888; see *Moncharsh, supra*, 3 Cal.4th at p. 12; *Royal Alliance,*

22

*supra*, at pp. 1105, 1108, 1110.) Notice and an opportunity to be heard are essential ingredients to a fair hearing, and these principles apply to arbitration hearings. (See *Smith v. Campbell & Facciolla, Inc.* (1962) 202 Cal.App.2d 134, 135; *Totem Marine, supra*, 607 F.2d at p. 651.) " '[A]rbitration procedures violate the common law right to a fair hearing . . . "when the applicable procedures essentially preclude the possibility of a fair hearing." [Citation.]' " (*Hoso, supra*, at pp. 888-889; see also *Haworth, supra*, 50 Cal.4th at p. 395 (dis. opn. of Werdegar, J.) [although arbitration finality is critical, "[a]n equally vital principle" is that the arbitration system must have "sufficient integrity that parties can be confident they will receive a fair hearing and an impartial decision from the arbitrator"].)

Viewing the totality of the circumstances, we cannot conclude that Kaplan had a fair arbitration hearing on the damages issues. First, in addition to the lack of notice of the punitive damages claim, the record is unclear whether Kaplan had notice of several of the critical hearings and orders in the case. For example, there is no showing Kaplan or his attorney had notice of the May 8 hearing at which the court set the deadlines for witness and document exchanges, or had notice of the order identifying these deadlines. This lack of notice is particularly troubling because plaintiffs took the position that Kaplan's failure to appear at this early scheduling hearing meant he was a defaulted defendant who was precluded from further participation in the case. For reasons that are not clear, the Arbitrator appeared to accept this characterization without any support in the record showing Kaplan had notice of this early proceeding. In this connection, the Arbitrator also ordered that Kaplan's counsel file a motion if he wanted to withdraw, but

23

then dropped this requirement and appeared to allow the case to move forward with no true clarity as to Kaplan's representation or service status. The Arbitrator's procedural rulings resulted in a lack of transparency and clear rules governing the procedure.

Second, there was substantial ambiguity as to the amount of claimed compensatory damages. Plaintiffs identified $1 million as their arbitration claimed amount, but later increased this request to $10 million the day before the hearing. Plaintiffs argue they provided adequate notice of this increased amount because they alleged the $10 million damages figure in their complaint; their initial arbitration claim referenced their complaint; the Arbitrator designated the complaint as asserting the claims at issue; and they mailed documents to Kaplan's attorney on the day this attorney withdrew from the representation. Kaplan counters it was reasonable for him to rely on the $1 million figure stated in the initial claim form. He emphasizes that the AAA administrator and plaintiffs recognized this amount as the damages claim based on plaintiffs' later agreement to pay increased fees for the *additional* damages requested in their arbitration brief. Regardless of which party is correct on these issues, the critical point is that plaintiffs designated the $1 million amount in their initial claim form and then materially added to this claim late in the process. This placed Kaplan at a substantial disadvantage in understanding the nature and amount of the damages sought against him. Although a party in arbitration proceedings is not entitled to full due process, parties are entitled to a fundamentally fair hearing process. (See *Royal Alliance, supra*, 2 Cal.App.5th at p. 1108.) The lack of notice and clarity regarding claimed

24

compensatory damages undermines confidence that the arbitration was fair on the damages issues.

Third, the AAA administrator's refusal to appoint a new arbitrator once the Arbitrator recused himself from all AAA matters was improper. Although an arbitrator has limited authority to modify or change an award (see §§ 1284, 1286.6, subds. (a) & (c); AAA rule 50), the motion papers should at least have been presented to an AAA arbitrator, rather than having an administrator make the determination. Regardless of the merits of a postarbitration hearing motion, it is for an arbitrator—and not an administrator—to exercise its discretion in reviewing and ruling on the parties' contentions. If the arbitrator errs in its ruling, the error can be challenged in the superior court. But it is not for an administrator to refuse to allow an arbitrator to even rule on the motion.

Fourth, the amount of the damages award—approximately $30 million—warrants particular attention. Although we have no authority to—and do not—reach the merits of the dispute, the numerous procedural shortcomings in light of the extraordinarily large amount of the damages (including punitive damages with no supporting net worth evidence) triggers heightened concern.

*Conclusion*

The parties agree a significant portion of the Arbitrator's damages award constituted punitive damages. Under the totality of the circumstances and recognizing our narrow review authority, we conclude this award cannot stand. The Arbitrator exceeded his powers in awarding punitive damages absent meaningful prior notice to

25

Kaplan that plaintiffs were seeking these damages, as required by the arbitration rules incorporated into the parties' contract and by procedural fairness principles.

Section 1286.2, subdivision (a)(4) provides a court "shall vacate" an arbitration award if the "arbitrators exceeded their powers *and* the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Italics added.) In this case, we have found the Arbitrator exceeded his authority by awarding punitive damages without sufficient notice required by the parties' arbitration agreement. Because the Arbitrator did not specify the breakdown of compensatory and punitive damages in the award, we cannot correct the award by striking a portion of the award without affecting the merits of the decision. Accordingly, our conclusion on the punitive damages award means the entire award must be vacated, and Kaplan is entitled to a new hearing on the damages amount.

DISPOSITION

Judgment reversed as to Kaplan. The matter is remanded with directions for the superior court to: (1) vacate the judgment confirming the arbitration award as to Kaplan; and (2) issue an order vacating the arbitration award against Kaplan and remanding for a new arbitration hearing on plaintiffs' damage claims against Kaplan. Respondents to bear appellant Kaplan's costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

27