Filed 3/30/26  Ace Design & Construction v. MAA Palm Desert Hospitality CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ACE DESIGN & CONSTRUCTION, INC., | D085989 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. PSC1908271) |
| MAA PALM DESERT HOSPITALITY, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Kira L. Klatchko, Judge.  Affirmed.

Artiano Shinoff, Daniel R. Shinoff and Maurice A. Bumbu for Defendant and Appellant.

Braun & Melucci and Kerri M. Melucci for Plaintiff and Respondent.

## I. INTRODUCTION

The trial court confirmed an arbitration award in favor of Ace Design & Construction, Inc. (Ace) and against MAA Palm Desert Hospitality, Inc. (MAA).  MAA appealed from the ensuing judgment, arguing the arbitrator

misinterpreted the parties' contract and failed to analyze offsetting damages. Finding these claims insufficient to vacate the arbitration award, we affirm.

## II. BACKGROUND

MAA owns the Springhill Suites by Marriott in Palm Desert. After a fire damaged the hotel in 2014, MAA hired Ace to reconstruct the property. MAA and Ace executed an American Institute of Architects' form titled "Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price" (Contract). The terms of the Contract spanned several documents, including an additional American Institute of Architects' form called "General Conditions of the Contract for Construction" (General Conditions).

The guaranteed maximum price under the Contract was $5,159,503, "subject to additions and deductions by Change Order." Change orders had to be in writing and signed by the parties. Exhibit F to the Contract listed the agreed upon values for different aspects of work included in the project. Some of these values were identified as "allowances." Allowances were included in the guaranteed maximum price, and the General Conditions specified that "whenever costs are more than or less than allowances, the [guaranteed maximum price] shall be adjusted accordingly by Change Order."

The parties signed the construction contract in July 2016. During construction, disputes arose between Ace and MAA concerning the scope of the work, delay, and payment. In 2019, Ace sued MAA seeking $859,835.42 in damages for unpaid construction work. In 2022, the parties agreed to

2

submit their dispute to binding arbitration, at which the arbitrator was to apply California law.[1]

The arbitration hearing occurred over eight days between July 2023 and November 2023. Ace submitted an itemized summary of damages in which it sought a total of $2,688,255.08. That figure was based on $600,000 in lost profits, several other categories of damages and prejudgment interest totaling $1,878,496.06, and $209,759.02 in attorney fees.

The arbitrator issued a "Final Arbitration Award" on March 21, 2024. Finding Ace's lost profits claim unproven, the arbitrator awarded Ace $1,375,679.11 in damages and interest and $120,285 in attorney fees. The arbitrator also determined that MAA was liable for all arbitration fees, which included $26,850 advanced by Ace.

MAA filed a motion for reconsideration on various grounds, including that the arbitrator failed to consider any offset in damages. In response, on May 3, 2024, the arbitrator issued a "Final Arbitration Award (As Amended)" which did not change the award but expanded on the arbitrator's reasoning. The amended award stated the Contract's "maximum price was specified as $5,159,503.00 but that was subject to 'allowances.'"

The amended award identified "three major areas of contention," starting with "Contract Percentage of Completion." In that section, the arbitrator noted that MAA estimated Ace completed 50 to 60 percent of the project, while Ace asserted its completion percentage was 70 to 80 percent. The arbitrator described how he "painstakingly reviewed . . . every piece of paper that was submitted by the parties" and made a "seventy-four page[]" chronology detailing the evolution of the project. Based on this chronology

---

[1]   By that time, the dispute included Kalthia Group Hotels, Inc., and Harco National Insurance Company but they are not parties to this appeal.

and other evidence submitted, "the Arbitrator determined which of the [parties'] numerous estimated percentages of completion was most likely correct." As for MAA's claimed expenditures after Ace left the project, the arbitrator determined that MAA "did not present evidence of what work was done or how much of it could have been attributed to the scope covered by [Ace's] contract and thereby reduced the percentage of contract work [Ace] had completed."

The next area of contention addressed in the amended award was under the heading "Change Orders." There the arbitrator addressed "Change Orders submitted by [Ace that] were neither signed nor paid by MAA." The arbitrator noted that the Contract "included a detailed Change Order process," but compliance with that process was excused for several reasons: the process "was neither followed nor insisted upon," some change orders were required by third parties, and other change orders involved matters that were not in the original plans. The arbitrator also explained that he "reviewed each item in each disputed Change Order individually, determined if an item was or was not an allowance item and, to the extent it was an allowance item, whether the change exceeded the allowed amount, either in a single Change Order or collectively in multiple Change Orders."

The final highly contested area was construction delay. The arbitrator found that the plans for the project contained inaccuracies, the work was significantly delayed by third parties, and MAA did not rebut Ace's summary of delays that showed no fault by Ace.

Shortly after the arbitrator issued the amended award, Ace sought to confirm it in the trial court. MAA opposed that petition and filed its own petition to correct or vacate the award on several grounds. As is relevant to this appeal, MAA claimed the arbitrator erred by stating the Contract's

4

maximum guaranteed price " 'was subject to "allowances" ' " and by failing to consider a damages offset.

The trial court granted Ace's petition and rejected MAA's claims for correcting and vacating the award with one exception. The trial court found the arbitrator improperly allocated all arbitration fees to MAA because the arbitration agreement required Ace to bear half of those costs. The trial court entered judgment in Ace's favor, from which MAA appealed.

## III. DISCUSSION

MAA argues the arbitrator erred on two grounds. First, MAA asserts the arbitrator committed misconduct and exceeded his powers by incorrectly stating that the Contract's guaranteed maximum price " 'was subject to allowances.' " Based on that statement, MAA presumes the arbitrator interpreted the Contract as permitting allowance amounts to be exceeded without a change order. MAA claims this violated both California law and the Contract because allowances were included in the guaranteed maximum price and could only be altered by a signed change order.

Second, MAA contends the arbitrator exceeded his powers by failing to analyze whether Ace's damages should have been offset because Ace did not complete the project. MAA asserts this was a disputed issue requiring resolution and the arbitrator failed to address it. As we explain below, neither ground warrants vacating the arbitrator's award.

A.    *Record on Appeal*

Ace argues that the following exhibits in MAA's Appellant's Index were not submitted to the trial court: Exhibit 2, the Contract; Exhibit 3, the General Conditions; Exhibits 4–6, change orders filed in the arbitration proceeding; Exhibit 7, the arbitration agreement; Exhibit 8, MAA's Opening Arbitration Brief; Exhibit 9, Ace's Opening Arbitration Brief; and

5

Exhibits 10–16, arbitration hearing transcripts. In response, MAA asserts "[i]t is an illogical stretch to suggest that a document not included in the superior court file is barred from being included in an appellate appendix." MAA also requests that we take judicial notice of these documents.

" ' "It has long been the general rule and understanding that 'an appeal reviews the correctness of [an order] . . . upon a record of matters which were before the trial court for its consideration' " [Citation.]' [Citation.] Documents not presented in the trial proceeding generally cannot be included as part of the record on appeal and must be disregarded on appeal as beyond the scope of review." (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1307.) "[W]e 'generally do not take judicial notice of evidence not presented to the trial court' " and judicial notice is only proper when the evidence is "relevant to the disposition of the matter." (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 745–746.)

Copies of Exhibits 2, 7, and 8 are included in Ace's Respondent's Appendix, indicating these documents were submitted to the trial court and are properly included in the record. As for Exhibit 3, the General Conditions, Ace does not dispute this document was a part of the parties' agreement and even cites to some of its provisions. We therefore take judicial notice of Exhibit 3. (Evid. Code, § 452, subd. (h).) Finally, the remainder of the exhibits (4–6, 9, 10–16), which consist of arbitration filings and transcripts, were not filed in the trial court nor are they relevant to our disposition of this appeal. We therefore deny MAA's request for judicial notice as to these exhibits and will not consider them.

B.    *Judicial Review of Arbitration Awards*

An arbitration award may be vacated if "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator," or "[t]he

arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision." (Code Civ. Proc., § 1286.2, subd. (a)(3) & (4).)

However, "judicial review of an arbitration award is extremely limited," and the general rule is that an arbitrator's decision is not "reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Bacall v. Shumway* (2021) 61 Cal.App.5th 950, 957.) As such, "[a]rbitrators do not exceed their powers by reaching erroneous factual or legal conclusions on the merits of the parties' claims."[2] (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1138.) Similarly, "an unreviewable error of law . . . does not demonstrate or even suggest 'misconduct' within the meaning of section 1286.2, subdivision (a)(3)." (*Taheri Law Group, A.P.C. v. Sorokurs* (2009) 176 Cal.App.4th 956, 963.)

C.    *Standard of Review*

We independently review a trial court's ruling on a petition to confirm an arbitration award. (*E-Commerce Lighting, Inc. v. E-Commerce Trade LLC* (2022) 86 Cal.App.5th 58, 63.)

D.    *The Arbitrator Did Not Exceed His Powers or Commit Misconduct When Discussing the Allowance Provisions in the Contract*

By asserting the arbitrator misinterpreted the Contract's allowance provisions and relevant law, MAA is asserting factual and legal error. We cannot review an arbitrator's decision on these grounds, nor do they establish that the arbitrator exceeded his powers or committed misconduct. " ' "[T]he

---

[2]    There is an exception to this rule when the parties "clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1361), but no such agreement was reached in this case.

arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement,' ' " and "[a] provision requiring arbitrators to apply the law leaves open the possibility that they are empowered to apply it 'wrongly as well as rightly.' " (*Cable Connection, Inc. v. DIRECTV, Inc., supra*, 44 Cal.4th at pp. 1360, 1361.)

Accordingly, the arbitrator's alleged misinterpretation of the Contract's allowance provisions does not provide an adequate basis to vacate the arbitration award.[3]

### E.    *The Arbitrator Analyzed MAA's Damages Offset Claim*

In response to MAA's motion to reconsider the original award, the arbitrator added a section titled "Contract Percentage of Completion" where he "painstakingly reviewed" all the evidence and determined which of the disputed percentages was correct. The arbitrator also determined that MAA did not present any evidence showing that the percentage of work completed by Ace should be reduced. Finally, the only damage item the arbitrator rejected was Ace's claim of lost profits, but he awarded Ace $1,375,679.11 in damages and interest, which is less than the $1,858,496.06 that Ace sought for those items.

As can been seen, although the arbitrator did not make any express findings regarding the percentage of completion, he certainly analyzed MAA's

---

[3]    We also note that the premise of MAA's argument is flawed. Nothing in the arbitrator's analysis indicates that he concluded the Contract's *terms* permitted allowance amounts to be exceeded without a change order. Instead, the arbitrator excused change order compliance based on the *conduct* surrounding the Contract's performance. As MAA acknowledges, change order provisions in a private contract may be waived. (See, e.g., *Weeshoff Constr. Co. v. Los Angeles County Flood Control Dist.* (1979) 88 Cal.App.3d 579, 589 ["If the parties, by their conduct, clearly assent to a change or addition to the contractor's required performance, a written 'change order' requirement may be waived."].)

offset claim and appears to have applied an offset by awarding Ace less damages and interest than Ace sought.  MAA's claim that the arbitrator failed to conduct an offset analysis is therefore not supported by the record.

## IV. DISPOSITION

The judgment is affirmed.  Ace is awarded costs on appeal.


RUBIN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.