Filed 6/22/22  Roudi v. Paydar CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| ALEX ROUDI et al., <br><br> Plaintiffs, Cross-defendants and Appellants, <br><br> v. <br><br> REZA PAYDAR, <br><br> Defendant, Cross-complainant and Respondent. | D078558 <br><br><br> (Super. Ct. No. 37-2019-00070138-CU-PA-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Reversed and remanded with directions.

Cooley, Steven M. Strauss and Erin Carey Trenda for Plaintiffs, Cross-defendants and Appellants Alex Roudi and Interwest Capital Corporation.

Koning Zollar, Blake M. Zollar and Neal R. Gibeault for Plaintiff, Cross-defendant and Appellant Interwest Capital Corporation.

Williams Iagmin and Jon R. Williams; English & Gloven, Donald A. English and Christy I. Yee for Defendant, Cross-complainant and Respondent.

Plaintiffs, cross-defendants and appellants Alex Roudi and Interwest Capital Corporation (Interwest) appeal from an order vacating an arbitration award in their favor and striking their petition to confirm that award. The arbitration award stemmed from two matters commenced by defendant, cross-complainant and respondent Reza Paydar: a document inspection and accounting dispute against Interwest and a shareholder derivative matter against both Roudi and Interwest. In granting Paydar's motion to vacate the award, the superior court ruled that plaintiffs' counsel, Cooley LLP (Cooley), violated California Rules of Professional Conduct, rule 1.7(d)(3),[1] prohibiting lawyers from simultaneously representing two clients if one asserts a claim against the other in the same proceeding, which created an unwaivable conflict of interest. Specifically, the court found impermissible dual representation in Cooley's representation of Interwest in the inspection/accounting matter including a cross-claim by Interwest against Paydar, while Cooley also defended Roudi in the derivative action and represented Roudi in Roudi's cross-claim against Paydar.

Plaintiffs contend the superior court lacked authority to review the merits of the arbitrator's decision, which included denying Paydar's motions to disqualify Cooley for Cooley's asserted violation of the same Rule of Professional Conduct barring dual representation of opposing clients in the same proceeding. They further contend that even if such review of the arbitrator's award was authorized, the court erred on the merits because there was not an unwaivable conflict of interest, and Cooley had both clients' informed written consent to representation. We agree the court lacked authority to review the award; that none of the statutory exceptions to

---

[1] Rule references are to the Rules of Professional Conduct.

2

limited judicial review raised by Paydar (Code Civ. Proc.,[2] § 1286.2) apply. Accordingly, we reverse the order. On remand the superior court shall grant plaintiffs' petition to confirm the arbitrator's award and deny Paydar's motions to strike plaintiffs' petition and to vacate the award.

FACTUAL AND PROCEDURAL BACKGROUND

*Prearbitration Disputes*

Roudi, Paydar and David Guss are shareholders of Interwest, which Roudi created in 2003 to make real estate investments. Roudi is a majority shareholder and Paydar and Guss are minority shareholders. The parties' shareholder agreement contains an arbitration clause.[3] Interwest researched properties for new deals and managed the properties before they were sold. Disputes arose between Roudi and Paydar; when Roudi reminded Paydar that Paydar did not need to invest in deals he did not like, Paydar responded by threatening to "destroy" Roudi. Paydar eventually decided he no longer wished to participate in future real estate investment deals, so Roudi unsuccessfully tried to negotiate a buyout of Paydar's interest in the

---

[2]    Undesignated statutory references are to the Code of Civil Procedure.

[3]    The arbitration clause is included in a "Governing Law" provision, and provides in part: "This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflict of law. Any and all disputes, claims or controversies arising out of or relating to this Agreement that are not resolved by their mutual agreement shall be submitted to final and binding arbitration in San Diego County, California before JAMS, or its successor, pursuant to the United States Arbitration Act, 9 U.S.C. Sec. 1 et seq. . . . The provisions of this paragraph may be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including reasonable attorneys fees, to be paid by the party against whom enforcement is ordered."

research/management side of Interwest. The shareholders then voted to transition Interwest's day-to-day operations to a new entity, Interwest Capital Group; that transition occurred in 2017.

In 2016, Paydar, first as a shareholder then as a director, made inspection demands on Interwest for, among other things, financial records and tax returns going back to its inception. He received thousands of pages of documents, including corporate records such as organizational documents, Interwest board and shareholder meeting minutes, stock purchase agreements and copies of the operating agreements for the assets at both management and ownership level, as well as detailed financial information such as profit and loss statements, balance sheets, general ledgers, cash flow statements, and check registers.

*First Arbitration*

In late 2016, Paydar served an arbitration demand on Interwest, *Paydar v. Interwest Capital Corporation*, JAMS Case No. 1240022667. Paydar claimed he was owed money and sought an accounting and damages from Interwest. Cooley represented Interwest in responding to the arbitration demand, and claimed in part that Paydar failed to provide adequate notice of the basis for his claims. Interwest pointed out that Paydar had received a large volume of Interwest's business records, and asserted his requests for documents had gone beyond the limited right of inspection under the Corporations Code.

In March 2017, Paydar initiated a superior court action against Interwest seeking appointment of a limited purpose receiver. The superior court judge stayed the action pending completion of the arbitration. Paydar then filed in the arbitration another request for an inspection, and later, a revised demand seeking to inspect Interwest's books and records. Paydar

4

alleged he was excluded from Interwest's decisionmaking and was not given the opportunity to invest in potential acquisitions. He further alleged Interwest's travel and entertainment expenses had "ballooned from approximately $105,000[ ] in 2013 to approximately $180,000[ ] in 2014." He alleged Interwest's payroll tax expenses had a roughly six-fold increase without substantiation for the change. Interwest responded in part by asserting "counter-claims" against Paydar for breach of the shareholders agreement and breach of fiduciary duty.

In 2018, the arbitrator ordered another inspection based on Paydar's rights as a director, to be conducted under a protocol developed by the parties' experts. The arbitrator found Paydar's accounting claim was inextricably bound with his inspection claims. A few months later, the arbitrator ordered the inspection completed after hearing from Paydar's expert as well as the parties about its status.

*Second Arbitration*

In October 2018, Paydar filed another demand for arbitration, JAMS No. 1240023404, against Roudi and Interwest as the real party in interest in a shareholder derivative action. Paydar asserted direct claims against Roudi and derivative claims on behalf of Interwest. In part, he alleged Interwest Capital Group had traded on and profited from Interwest's name, reputation and employees; Roudi had unilaterally and fraudulently diverted management, income and skilled employees from Interwest to Interwest Capital Group; Roudi refused to allow Paydar to inspect material Interwest records despite his status as a director; and Roudi had used Interwest as his "personal piggy bank," directing or approving travel, meal and entertainment expenses not for Interwest's benefit. Paydar alleged Interwest paid Roudi

5

millions of dollars in capital finder fees without evidence that Roudi had brought in outside investors as required by operating agreements.

Given the derivative claims, Interwest retained new counsel to represent it in its derivative capacity, and Cooley advised the arbitrator it would continue to represent Roudi. Cooley obtained Interwest's written consent; Guss signed the consent form on Interwest's behalf.

Paydar then moved to disqualify Cooley, pointing out Cooley was representing Interwest in the first arbitration at the same time it was representing Roudi in the derivative matter, which matters were in a sense "*both* concurrent and successive . . . ." Paydar argued rule 1.7 prohibited such conflicts and made disqualification mandatory notwithstanding consent or waiver; the allegations of the derivative matter, particularly the allegations of fraudulent activity on Roudi's behalf, established the conflict and made it unwaivable. The arbitrator denied the motion, ruling "Cooley . . . has handled the representation of [Interwest and Roudi] 'in an appropriate way' that is consistent with the California Rules of Professional Conduct and relevant case law authority."

*Arbitrator's Rulings on the Merits*

Following a four-day evidentiary hearing, the arbitrator issued an "interim award and order of consolidation" ruling in favor of Roudi and Interwest on all of Paydar's claims and causes of action. He pointed out the inspection matter was combined with the derivative matter along with Interwest's counterclaims in the inspection matter for breach of fiduciary duty and breach of the shareholder's agreement, and that Roudi also had a counterclaim for breach of the shareholder's agreement in the derivative matter. The arbitrator stated that throughout the inspection process, Paydar relied heavily on his absolute inspection rights as a director but used those

6

rights to obtain evidence to be used for his own interests, not Interwest's. The interim award states in part: "It is clear to the Arbitrator that [Paydar] from the beginning was out to make [Roudi] pay for his perceived arrogance. [Paydar] while testifying stated that he believed that he was the most talented negotiator of the shareholders and it was obvious that he felt slighted by [Roudi] because he didn't recognize this. He resented the [capital finders] promotes created to recognize the efforts of primarily [Roudi]. [¶] This arbitration and all of the actions taken before filing it were done to keep [Paydar's] threat made to [Roudi] in June 2013, 'I am going to destroy you.'" The arbitrator ruled that Roudi and Interwest could make an appropriate motion for fees and costs.

Following issuance of the interim award, Paydar filed motions to reconsider and/or renew his motion to disqualify Cooley, reopen the hearing to set aside the award, and moot the arbitral proceeding in light of Cooley's asserted conflict of interest. The arbitrator then issued an amended final award, in part denying Paydar's motions as "completely without merit." The final award states that "[t]he arbitrator made no award for fees and costs in the inspection matter. It was combined with this new case along with the counterclaims of [Interwest] in the first action for breach of fiduciary duty and breach of the shareholder's agreement." The arbitrator made factual and

legal findings in Roudi and Interwest's favor.[4]  He "rule[d] against Paydar on all claims and causes of action against [Roudi and Interwest]"; ordered that Paydar "shall take nothing pursuant to this action and the prior inspection action"; and "rule[d] in favor of [Roudi and Interwest] on their cross complaints," ordering Paydar to pay $1,975,276.57 in damages ($927,221.57 to Interwest, and $1,048,055 to Roudi).

*Postarbitration Proceedings*

Roudi and Interwest jointly petitioned to confirm and enter judgment on the arbitrator's award, arguing there were no grounds to vacate or correct it.  They argued they met all of the statutory requirements for the court to " 'confirm the award as made' " and enter judgment in conformity with it.  More specifically, Roudi and Interwest argued (1) they were parties to the arbitration in which the award was made; (2) they served and filed the petition in a timely manner; (3) they named all parties to the arbitration proceeding as respondents to the petition; (4) the petition met the

---

[4]    Specifically, the arbitrator found Paydar (1) lacked standing to file a derivative action because he failed to satisfy Corporations Code demand requirements; (2) failed to establish claims for breach of fiduciary duty and unjust enrichment; (3) did not establish breach of fiduciary duty, fraud by suppression/concealment, breach of the implied covenant of good faith and fair dealing, or unjust enrichment for purposes of his direct claims; (4) was bound by the written agreements that he signed; (5) was offered fair market value for his interest in the Interwest platform and when he turned it down it was proper for the majority of the shareholders to voluntarily wind up and begin Interwest's dissolution; (6) breached his fiduciary duty to Interwest in that he used his status as a director for his own personal benefit and to Interwest's detriment and engaged in actions that were disruptive and strained the company's limited resources; and (7) breached the shareholder agreement by failing to arbitrate in good faith against either Interwest or Roudi.  The arbitrator found as to any other claims or issues "against the party having the burden of proof and in favor of the opposing party."  (Some capitalization omitted.)

8

requirements of section 1285.4; (5) the court was the proper venue for the petition; and (6) there were no grounds to vacate, correct, or otherwise modify the award.

Paydar moved to strike the joint petition or assertedly "irrelevant, false, or improper" portions of it pertaining to plaintiffs' request to confirm a "consolidated" award in both the derivative and accounting/inspection matters. In part, Paydar argued that the joint petition "requests relief that is not authorized by law and is contrary to the Rules of Professional Conduct." He argued the joint petition should be stricken as a "sham pleading" under section 436. He argued the court would violate his fundamental due process rights by entering judgment in both the inspection/accounting matter and the derivative matter based on an award issued only in the derivative action.

Paydar also petitioned to vacate the award on grounds the arbitrator exceeded his power by issuing an award that violated public policies (1) prohibiting a lawyer's representation of clients with directly adverse interests; (2) protecting Paydar's statutory rights to inspect Interwest's books and records; (3) protecting Paydar's right to pursue his claims in arbitration; and (4) prohibiting the illegal receipt of fees for transactions that require a broker's license. He argued the arbitrator exceeded his powers by awarding attorney fees not authorized by the parties' written agreement.[5] With respect to his claim of improper dual representation, Paydar argued in part under *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing*

---

[5]    Paydar also argued the superior court could not consider the joint petition to confirm because it improperly sought to confirm an award issued solely in the derivative matter as a consolidated award in two separate arbitration matters. Paydar does not renew that contention in his respondent's brief but rather asserts that the court's consolidation of the arbitration matters was a "procedural anomaly" that exacerbated Cooley's actual conflict of interest.

9

*Company, Inc.* (2018) 6 Cal.5th 59 (*Sheppard, Mullin*), that an arbitration award based on a violation of the Rules of Professional Conduct is contrary to public policy and mandates the derivative award be vacated as a matter of law under section 1286.2, subdivision (a)(4). He maintained Cooley's violation of ethical duties prejudiced his right to a fair hearing, and also Interwest's right to its counsel's undivided loyalty.

The superior court determined that Cooley violated rule 1.7(d)(3) by engaging in improper dual representation of Interwest in the inspection/accounting matter and Roudi in the derivative matter. According to the court, its determination required the arbitration award be vacated under section 1286.2, subdivision (a)(4), on grounds " '[t]he arbitrator[ ] exceeded [his] powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.' " It acknowledged that most legal errors in arbitration are not reviewable, but ruled the arbitrator's decision was not protected by that general rule: " 'A party seeking confirmation cannot be permitted to rely upon the arbitrator's conclusion of legality for the reason that paramount considerations of public policy require that this vital issue be committed to the court's determination whenever judicial aid is sought.' [(*Sheppard, Mullin*, *supra*, 6 Cal.5th at p. 75.)] 'An Arbitrator exceeds his powers when he . . . issues an award that violates a well-defined public policy . . . issues an award that violates a statutory right . . .' or 'when he acts in a manner not authorized by the contract or law.' [Citation.] Whether a particular law firm may or may not represent a party in a hotly contested, [four]-day arbitration goes to the very heart of the proceeding. Cooley's violation of [rule] 1.7(d)(3) resulted in an arbitration proceeding that violated public policy and should not have been

10

allowed to proceed given Cooley's dual representation of Interwest in the inspection/accounting case and Roudi in the derivative case."

Plaintiffs filed this appeal.

DISCUSSION

I. *Legal Principles and Standard of Review*

"When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. [Citations.] Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for ' "[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." ' " (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184.) "[C]ourts will not review the validity of the arbitrator's reasoning." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 (*Moncharsh*).) This is so "even when . . . errors [of fact or law] appear on the face of the award or cause substantial injustice to the parties." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916; see also *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775 [it is settled that arbitrators do not exceed their powers "merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators"].) " '[B]y voluntarily submitting to arbitration, the parties have agreed to bear the risk [of uncorrectable legal or factual error] in return for a quick, inexpensive, and conclusive resolution to their dispute.' " (*Heimlich v. Shivji* (2019) 7 Cal.5th

11

350, 367; *Richey*, at p. 916.)  Thus, "[m]ost legal errors in arbitration are not reviewable."  (*Heimlich*, at p. 367.)

Both the California Arbitration Act and the Federal Arbitration Act contain limited and "exclusive" grounds for review of an arbitration award.  (*Richey v. AutoNation, Inc., supra*, 60 Cal.4th at p. 916, citing § 1286.2, subd. (a), 9 U.S.C. § 10(a); *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1085-1086, citing *Moncharsh, supra*, 3 Cal.4th at pp. 27-28.)  One of the statutory exceptions allowing judicial review requires that the court vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."  (§ 1286.2, subd. (a)(4).)[6]  But these statutory

_____

[6]     Paydar's petition to vacate also raised section 1286.2, subdivision (a)(5), which requires a court to vacate an award when "[t]he rights of [a] party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."  (§ 1286.2, subd. (a)(5).)  On appeal Paydar touches on that section and claims without meaningful argument it presents a separate ground to affirm the court's order.  Subdivision (a)(5) of section 1286.2 is a " 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case' " and "comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue."  (*Heimlich v. Shivji, supra*, 7 Cal.5th at p. 368.)  It can be invoked when an arbitration panel permits one party to speak "unsworn and at length" but "denie[s] the [other party] the opportunity to cross examine . . . or to speak herself" out of concerns that the arbitration will take too long.  (*Id.* at pp. 368-369.)  Though he complains about *Cooley's* misconduct in

"exceptions to the limits on review of awards protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair. The Legislature has authorized 'judicial review in circumstances involving *serious problems* with the award itself, or with the fairness of the arbitration process.' [Citation.] ' "The statutory provisions for [review of an arbitration award] are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, gross error, or mistake has been carried into the award to the substantial prejudice of a party to the proceeding." ' " (*Heimlich v. Shivji, supra*, 7 Cal.5th at p. 368, fn. omitted.) If not properly limited, the exceptions " 'could swallow the rule that arbitration awards are generally not reviewable on the merits.' The [exceptions are] not 'a back door to *Moncharsh* through which parties may routinely test the validity of legal theories of arbitrators.' " (*Ibid*.)

In determining whether an arbitrator exceeded his powers, we review the superior court's decision de novo. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*); *Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 528.) "[E]valuating a challenge to an arbitration award is a two-step process—first the court must determine whether the award is reviewable, and only if review is appropriate does the court consider whether the award

---

representing Roudi and Interwest including by withholding unspecified documents, Paydar makes no such claims about the *arbitrator's* conduct of the proceeding. This subdivision is not a basis to affirm the superior court's order. Other statutory grounds are corruption, fraud or other undue means in procuring the award (§ 1286.2, subd. (a)(1)); corruption by the arbitrators (§ 1286.2, subd. (a)(2)); arbitrator misconduct (§ 1286.2, subd. (a)(3)); and the arbitrator's failure to disclose a ground for disqualification or to disqualify when required to do so (§ 1286.2, subd. (a)(6)). (See *Heimlich v. Shivji*, at p. 368, fn. 10.)

13

should be upheld." (*SingerLewak LLP v. Gantman* (2015) 241 Cal.App.4th 610, 622; see *Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 45.)

## II. *The Arbitrator Issued Decisions on the Merits of Cooley's Alleged Conflict of Interest*

We begin with a simple proposition that plaintiffs advance and Paydar does not contest: The arbitrator considered Paydar's requests to disqualify Cooley for its asserted conflict of interest in representing both Roudi and Interwest, and denied both the original and renewed motions. This was part of the merits of the controversy to be decided by the arbitrator as bargained for by the parties in their arbitration clause, which broadly encompassed "any and all disputes, claims or controversies arising out of or relating to [the shareholder agreement] . . . ." (*Moncharsh, supra*, 3 Cal.4th at p. 38 ["Obviously, the 'merits' include all the contested issues of law and fact submitted to the arbitrator for decision"]; *Gueyffier v. Ann Summers, Ltd., supra*, 43 Cal.4th at p. 1185 [arbitrator's powers derive from, and are limited by, the agreement to arbitrate].) "[I]t is within the 'powers' of the arbitrator to resolve the entire 'merits' of the 'controversy submitted' by the parties" (*Moncharsh*, at p. 28) and this included the controversy over whether Cooley should have been disqualified from representing Interwest in the arbitration proceeding due to perceived conflicts of interest. In addition, "it is for the arbitrators to determine what issues are 'necessary' to the ultimate decision." (*Advanced Micro Devices, supra*, 9 Cal.4th at p. 372.)

The arbitrator did not exceed his powers by acting in a manner beyond the scope of the parties' agreement. As a consequence, the arbitrator's analysis and resolution of the merits of that controversy are not subject to judicial review. (*Richey v. AutoNation, Inc., supra*, 60 Cal.4th at p. 917

14

["'"[a]rbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error"'"]; *Moncharsh*, *supra*, 3 Cal.4th at p. 6.) Here, by accepting the benefits of arbitration, the parties "accept[ed] the risk of 'an erroneous decision by the arbitrator'" on the issue of Cooley's asserted violation of Rules of Professional Conduct by conflicted representation. (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1138.)

III. *The Arbitrator's Award of Money Damages in This Shareholder Dispute Does Not Violate Public Policy*

Paydar nevertheless maintains the court properly reviewed and vacated the arbitration award because it was contrary to public policy due to Cooley's violation of the Rules of Professional Conduct. It is true that "[a]rbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey v. AutoNation, Inc.*, *supra*, 60 Cal.4th at p. 916; *Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 764.) "'Vacating an arbitration award based on public policy or a statutory right requires an explicit legislative expression of a *public* policy *violated by the award* or a conflict with a statutory scheme.' [Citation.] Courts are otherwise reluctant to invalidate an arbitration award because 'the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure.'" (*Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1252, italics added.)

This exception to limited judicial review applies in very narrow circumstances as, for example, where conducting private arbitration itself

would contravene a statutory public policy (see *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 274-274, 287-288 [Education and Government Code sections reflected "an 'explicit legislative expression of public policy' that issues involving the reelection of probationary teachers not be subject to arbitration," thereby barring arbitrator's enforcement of collective bargaining agreement's procedures that limited school district's dismissal of probationary teachers and allowing for judicial review]) or the award itself violates a statutory limitation. (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 438, 444, 450-451 [exception applied to vacate $88 million attorney fee award in statutorily authorized arbitration that limited award to $18 million; the arbitration award of $88 million, founded on an improper common fund theory, was "both against public policy and an unconstitutional gift of public funds" and the prohibition against gifts of public funds was "a clear public policy set forth in" the state Constitution].)

In *Moncharsh*, the California Supreme Court declined to apply this rule permitting judicial review of an arbitration award in circumstances involving an attorney's dispute with his former law firm. The attorney had argued both during the arbitration and on appeal that a fee-splitting provision in his employment contract violated public policy as well as various Rules of Professional Conduct prohibiting certain types of fee-splitting arrangements, unconscionable fees, and agreements restricting an attorney's right to practice. (*Moncharsh, supra*, 3 Cal.4th at pp. 7, 32-33.) The court rejected the attorney's effort to obtain judicial review of the award on that ground: "We perceive . . . nothing in the Rules of Professional Conduct at issue in this case that suggests resolution by an arbitrator of what is essentially an ordinary fee dispute would be inappropriate or would improperly protect the

16

public interest. Accordingly, judicial review of the arbitrator's decision is unavailable." (*Id.* at p. 33.)

We review de novo whether an arbitration award contravenes an unwaivable statutory right or public policy. (*Department of Human Resources v. International Union of Operating Engineers* (2020) 58 Cal.App.5th 861, 873; *Sargon Enterprises, Inc. v. Browne George Ross LLP*, *supra*, 15 Cal.App.5th at p. 763; *Ling v. P.F. Chang's China Bistro, Inc.*, *supra*, 245 Cal.App.4th at p. 1252.)

Doing so compels us to reverse the order vacating the award. The arbitrator here awarded Interwest and Roudi monetary damages on their counterclaims against Paydar for what the arbitrator found was Paydar's breach of fiduciary duty (using his status as a director for his own personal benefit and to Interwest's detriment), and breach of the shareholder agreement (his failure to arbitrate in good faith). The damages consist of the fees and costs Interwest and Roudi incurred as a result of Paydar's breaches.

Does this award of money damages in a dispute among corporate shareholders violate a well-defined public policy or an unwaivable statutory right? Is the award of such damages irreconcilable with any such policy or right? The answer is no.

Paydar would argue this conclusion is contrary to the California Supreme Court's decision in *Sheppard, Mullin, supra*, 6 Cal.5th 59. He states the "key principle" in that case is "that a violation of the Rules of Professional Conduct is contrary to public policy and cannot be upheld by the court reviewing an arbitration award . . . ." (Emphasis omitted.) According to Paydar the *Sheppard, Mullin* court held a violation of those rules "can afford . . . [a] ground for vacating an award under section 1286.2[, subdivision] (a)(4) . . . ." (Emphasis omitted.)

17

*Sheppard*, *Mullin* does not stand for such general rules. That case involved a law firm that concurrently represented opposing parties in litigation but failed to inform their new client of that conflict of interest. (*Sheppard, Mullin, supra*, 6 Cal.5th at pp. 68-70.) When litigation ensued between the firm and new client, the firm petitioned to compel arbitration under a clause in the client retainer agreement. In response, the client unsuccessfully argued the conflict had rendered the entire agreement illegal and the matter proceeded to arbitration resulting in a favorable ruling for the firm and a $1.3 million award of fees and interest. (*Id*. at pp. 70-71.) On the firm's petition to confirm the award, the superior court held violation of the Rules of Professional Conduct did not render the retainer agreement unenforceable, and thus the arbitrators did not exceed their power in awarding contractual fees. (*Id*. at p. 71.)

The Court of Appeal reversed, and the California Supreme Court agreed that the law firm's ethical breach and violation of the Rules of Professional Conduct, which "affected the whole" of the client retainer agreement including its arbitration clause, rendered the entirety of that agreement unenforceable as against public policy. (*Sheppard, Mullin, supra*, 6 Cal.5th at pp. 68, 80, 87.) The court said, "[A] contract or transaction involving attorneys may be declared unenforceable for violation of the Rules of Professional Conduct, the set of binding rules governing the ethical practice of law in the State of California." (*Sheppard, Mullin*, at p. 73, see also p. 74 ["an attorney contract that has as its object conduct constituting a violation of the Rules of Professional Conduct is contrary to the public policy of this state and is therefore unenforceable"].) As a result, "an agreement to arbitrate is invalid and unenforceable if it is made as part of a contract that is invalid and unenforceable because it violates public policy." (*Id*. at

18

pp. 78-79.)

In addressing whether judicial review of the award was proper, the court explained the statutory exceptions for judicial review (§ 1286.2) included circumstances where the arbitrator exceeded his or her powers. (*Sheppard*, *Mullin*, *supra*, 6 Cal.5th at pp. 72-73, citing § 1286.2, subd. (a)(4).) It relied on the "framework" established in *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 (*Loving*), which held such an "excess-of-authority exception applies, and an arbitral award must be vacated, when a court determines that the arbitration has been undertaken to enforce a contract that is 'illegal and against the public policy of the state.' " (*Sheppard*, *Mullin*, at p. 73.) In *Loving*, the illegal agreement was that of a group of unlicensed contractors, who received an arbitration award in their favor. (*Sheppard*, *Mullin*, at p. 74, citing *Loving*, at pp. 604-607.) "[T]o enforce the agreement of an unlicensed contractor would violate the public policy codified in statutes forbidding unlicensed persons from engaging in the contracting business and from recovering compensation for such business." (*Sheppard*, *Mullin*, at p. 74, citing *Loving*, at pp. 606-607, 613-614.) In such a case, the rules of finality for an arbitrator's determination of ordinary questions of fact or of law are "inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award." (*Sheppard*, *Mullin*, at p. 74, quoting *Loving*, at p. 609; see also *Moncharsh*, *supra*, 3 Cal.4th at pp. 31-32 ["*Loving* [and other cases] . . . permitted judicial review of an arbitrator's ruling where a party claimed the entire contract or transaction was illegal"; "Although we recognized the general rule [in *Loving*] that the merits of a dispute before an arbitrator are not subject to judicial review, 'the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of

19

illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award' " (italics omitted)].)  The illegality of the underlying contract presented an issue for judicial determination, not for the arbitrator.  (*Sheppard*, *Mullin*, at pp. 74-75.)

The ethical conflict in *Sheppard, Mullin* tainted the parties' entire engagement agreement, including its provision to arbitrate disputes, and made the firm's representation of the client illegal from the outset.  Under those circumstances, the superior court properly vacated the arbitration award in favor of the attorneys seeking fees under that agreement for their representation as in excess of the arbitrator's authority.  This is not a situation as in *Sheppard, Mullin, supra*, 6 Cal.5th 59 or *Loving, supra*, 33 Cal.2d 603, where one party to the arbitration challenges the legality of the entire underlying agreement between the parties.  Here, the agreement underlying the dispute between Paydar, Roudi and Interwest and permitting arbitration is the parties' shareholder agreement.  There is no claim Cooley's actual or potential conflict of interest invalidated *that agreement* or rendered it unenforceable in its entirety, and thus the circumstances do not implicate *Sheppard, Mullin*'s excess-of-authority exception for a contract made illegal or unenforceable due to a Rules-of-Professional-Conduct violation.

*Sheppard, Mullin* does not state a general public policy exception to the rule of limited judicial review where a public policy issue is "involve[d]" in an arbitration.  More particularly, the case does not stand for a rule requiring an arbitration award be vacated where the award "sanctions" or is "based on" a violation of the Rules of Professional Conduct, as Paydar maintains.  Were we to credit Paydar's arguments and give a broad construct to the exception stated in *Sheppard, Mullin,* the exception would " 'swallow the rule that arbitration awards are generally not reviewable on the merits.' " (*Heimlich v.*

20

*Shivji, supra*, 7 Cal.5th at p. 368.) We decline to create a " 'a back door to *Moncharsh* through which parties may routinely test the validity of legal theories of arbitrators.' " (*Ibid.*)

Paydar also relies on *City of Palo Alto v. Service Employees International Union* (1999) 77 Cal.App.4th 327. But there too, the arbitrator's *award itself*—requiring an employer to unconditionally reinstate a potentially violent employee subject to a workplace restraining order—was held to contravene an injunction and public policy requiring obedience to judicial orders. (*Id.* at pp. 339-340.) The award was in favor of a union, which argued an employee's dismissal failed to comply with a union contract. But the employee had threatened to kill another employee and his wife and child, and the city who employed them had obtained a no-contact injunction against that employee. (*Id.* at pp. 331-332.) The appellate court held: "We see no way that the arbitrator's award reinstating [the employee] could have been put into operation without [him] disobeying the . . . injunction. Thus, the *arbitration award of unconditional reinstatement* was irreconcilable with the public policy requiring obedience to court orders, especially an injunction issued pursuant to . . . section 527.8. The conflict was all the more profound since the injunction was based upon a judicial finding by clear and convincing evidence that [the employee] had made a credible threat of violence against [the other employee]." (*Id.* at pp. 339-340.) The award of money damages in this shareholder dispute raises no such public policy violation.

Paydar references *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, another case that applies the exception to the rules prohibiting judicial review. That case involved an arbitrated dispute between two members of a limited liability company over alleged mismanagement, construction delays and cost overruns in the company's condominium development project. (*Id.*

at pp. 24, 26-27.)  The members had hired one of the respondent's general contracting companies, which was unlicensed, for the project.  (*Id*. at p. 29.)  In arbitration, the appellant unsuccessfully argued the absence of a license required that the contractor disgorge all compensation for its contracting services under Business and Professions Code section 7031.  (*Id*. at p. 24.)  The superior court ruled the arbitrators' decision was not reviewable and denied appellant's petition to vacate the award, in which he argued the arbitrators had exceeded their authority by allowing respondents to keep the compensation they had received for work on the project despite being unlicensed.  (*Id*. at pp. 28, 29.)  The Court of Appeal reversed, holding section 7031 "constitutes an explicit legislative expression of public policy regarding unlicensed contractors" and thus the general prohibition of judicial review of arbitration awards did not apply.  (*Id*. at p. 38.)  The court continued, "[T]he trial court should have conducted a de novo review of the evidence to determine whether disgorgement of compensation for [the contractor's] construction work was required by section 7031."  (*Id*. at p. 39.)  Thus, in *Ahdout*, as in *City of Palo Alto v. Service Employees International Union*, *supra*, 77 Cal.App.4th 327, the award of compensation to an unlicensed contractor contravened an explicit statutory public policy, bringing it within the exception to the rules of limited judicial review.

These cases do not create a generally applicable public policy exception to section 1286.2's limitations on the review of arbitration awards.  They do not compel a conclusion that the arbitrator here exceeded his powers by awarding Roudi and Interwest money damages for Paydar's breaches of his fiduciary duty and the shareholder agreement.

22

IV. *Paydar's Claim that the Arbitrator Conducted an Unfair Hearing by*
*Permitting Conflicted Representation*

Paydar contends in various places in his respondent's brief that the arbitrator's procedures resulted in an unfair hearing; that the arbitrator interfered with his right to a fair hearing or prevented him from fairly presenting his case. He argues: "[T]he arbitrator conducted an unfair proceeding by allowing Cooley's improper simultaneous, dual representation of two adverse parties, Interwest and Roudi. This compromised the integrity of the entire proceedings and was substantially prejudicial to Interwest and its shareholders including Paydar." He argues the dual representation "was also prejudicial to the adversarial process and our system of justice." Citing *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, he argues "[t]his [principle that an arbitration be conducted in a fair and neutral manner] is a direct corollary of the long established principle that arbitrators exceed their powers when they issue an award that contravenes 'a well-defined public policy.'"

*O'Flaherty* does not support such a proposition. That case involved the dissolution of a law partnership having a partnership agreement with an arbitration clause specifying that the arbitrator had no power to " 'grant any remedy . . . not available in a court of law.' " (*O'Flaherty v. Belgum, supra*, 115 Cal.App.4th at p. 1049.) The partnership agreement did not allow for forfeiture of a partner's capital account; it provided that capital would be returned to withdrawing partners even if the withdrawal was wrongful. (*Id.*at pp. 1057-1058.) The Uniform Partnership Act governing the partnership did not authorize forfeiture of capital accounts as a remedy (*id.* at p. 1057) and caselaw did not support forfeiture as an available remedy in disputes related to partnership accounts. (*Id.* at pp. 1058-1059.) The

23

appellate court thus held an arbitrator exceeded his authority by contradicting the arbitration agreement's provision and ordering that the withdrawing partners forfeit their partnership capital accounts. "By providing a remedy inconsistent with the provisions of the partnership agreement and specifically in contradiction to the partnership agreement provision that the arbitrator has no power to order a remedy prohibited by the agreement or not available in a court of law, the arbitrator in effect awarded 'a remedy expressly forbidden by the arbitration agreement.' " (*O'Flaherty*, at p. 1061.) *O'Flaherty* did not involve claims of an "unfair" arbitration hearing or violation of public policy, and it does not support the proposition that conducting an "unfair hearing" is a "direct corollary" or has any relation to the latter principle concerning public policy. (See *Gueyffier v. Ann Summers, Ltd.*, *supra*, 43 Cal.4th at pp. 1187-1188 [summarizing *O'Flaherty*].)

Paydar also relies on cases such as *Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881 and *Emerald Aero, LLC v. Kaplan*, *supra*, 9 Cal.App.5th 1125 for the proposition that an arbitrator will exceed his powers by conducting an unfair hearing. In *Hoso Foods*, the arbitrator permitted only a single representative of the appellant, a corporate lessor, to be present during an arbitration. (*Hoso Foods, Inc. v. Columbus Club, Inc.*, *supra*, 190 Cal.App.4th at pp. 883, 885-886.) The individual, Rodela, had been sued personally along with the corporation, he was not the lessor's choice of representative, he was not involved in significant aspects of the transaction, and he was dismissed from the action at the hearing's conclusion. (*Id*. at p. 883.) Undisputed evidence in the record demonstrated that no other officer or representative was permitted to participate in or observe the proceedings except during their own testimony, even though the corporation wanted

24

someone other than Rodela present. (*Id*. at p. 891.) The appellate court reversed an order confirming the arbitration award, explaining at the outset that " '[a]rbitration procedures violate the common law right to a fair hearing "only in the clearest of cases, i.e., when the applicable procedures essentially preclude the possibility of a fair hearing." ' " (*Id*. at pp. 888-889, see also p. 892 [an arbitration procedure violates a party's right to a fair hearing under "extremely limited circumstances" as when it essentially precludes the possibility of a fair hearing].) Nothing in the rules of commercial arbitration suggested the arbitrator had the power to preclude the corporation from designating a representative; rather, the rules restricted the arbitrator from excluding persons with direct interests in the arbitration from the proceedings. (*Id*. at p. 889.) The absence of an independent representative prejudiced the appellant because Rodela was unable to dispute the other party's representations and evidence concerning lease negotiations. (*Id*. at p. 892.) "Rodela had neither the knowledge nor the incentive to effectively represent appellant's interests at the arbitration." (*Ibid*.) Under those circumstances, the court should have vacated the arbitration award. (*Ibid*.)

In *Emerald Aero*, the parties' arbitration agreement expressly incorporated the American Arbitration Association rules, which required 14 days' written notice before a party changed or increased its claim. (*Emerald Aero, LLC v. Kaplan*, *supra*, 9 Cal.App.5th at pp. 1140-1141.) In violation of these rules, the plaintiffs made a request for punitive damages 24 hours before the arbitration hearing. (*Id*. at p. 1141.) This court held the arbitrator exceeded his powers by awarding punitive damages without the notice to the defendant that the arbitration agreement required, and also where the defendant may have lacked notice of several critical hearings and orders in the case as well as notice and clarity regarding the plaintiffs' claimed

25

compensatory damages. (*Emerald Aero,* at pp. 1143, 1146.) This prevented the defendant from having a fair arbitration hearing on the damages issues. We explained that "a party may successfully challenge an arbitration award if the relief granted was in violation of 'specific restrictions' (1) 'in the arbitration agreement'; (2) 'the submission' of the claim to the arbitrator; or (3) 'the rules of arbitration.' " (*Id*. at p. 1140, quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at p. 367.) In *Emerald Aero*, judicial review was permitted because the arbitrator issued an award that "violated applicable arbitration rules and procedural fairness principles." (*Id*. at p. 1130.) Paydar does not raise such procedural shortcomings in this case.

We reject Paydar's suggestion that judicial review of an arbitration award is warranted when one party perceives some "unfairness" in the award or the proceeding. The California Supreme Court explains that it is through the limited statutory exceptions that the Legislature permits judicial review where there are serious problems with the *award itself* or the *fairness of the arbitration process*. (*Moncharsh, supra*, 3 Cal.4th at pp. 12-13.) That the arbitrator conducted the arbitration hearing with one party represented by potentially or actually conflicted counsel does not constitute a " ' "serious problem[ ] with the . . . fairness of the arbitration *process*" ' " (*Emerald Aero, LLC v. Kaplan, supra*, 9 Cal.App.5th at p. 1138, italics added) or meet the extremely limited circumstances that would justify judicial review. (*Hoso Foods, Inc. v. Columbus Club, Inc., supra*, 190 Cal.App.4th at pp. 892.) Nor was it a violation of a " ' "specific restriction[ ]" ' " in the arbitration agreement, the arbitration rules, or the submission of the claim to the arbitrator. (*Emerald Aero*, at p. 1140.)

Judicial review here is particularly inappropriate because the arbitrator himself decided the question of whether Cooley's representation

violated the Rules of Professional Conduct, a question of law on undisputed facts that is not reviewable. (See *Hance v. Super Store Industries* (2020) 44 Cal.App.5th 676, 683 [application of rule to undisputed facts is a question of law reviewed de novo].) Paydar's arguments about unfairness do not bring the circumstances outside the extremely limited judicial review of arbitral awards.

## V. *Paydar's Alternative Arguments*

We reject Paydar's alternative arguments for affirming the court's order.

### A. *Forfeiture With Regard to Paydar's Motion to Strike*

Paydar contends that while plaintiffs include a section in their opening brief headed, "No Alternative Grounds to . . . Grant the Motion to Strike," they did not develop any argument against the superior court's order striking their petition to confirm. He maintains plaintiffs thereby waived any challenge to that order, requiring that we allow it to stand and affirm on that independent basis.[7] Plaintiffs point out in response that the superior court considered all of the motions together and granted Paydar's motion to strike on the same ground as the motion to vacate the award.

We reject Paydar's waiver argument. The court's order states: "The three formal motions before the court, *i.e.,* (1) Roudi's and Interwest's petition

_____

[7] Paydar has also moved to strike unspecified portions of pages 60 through 63 of plaintiffs' reply brief on appeal on the ground plaintiffs are improperly raising arguments for the first time there concerning his motion to strike made below. To the extent plaintiffs' reply arguments merely rebutted the waiver claims Paydar made in his respondent's brief, they are not new. (See *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275-276 [an issue is new if it does more than rebut arguments made in the respondent's brief].) In any event, we deny Paydar's motion to strike portions of plaintiffs' reply brief for the reasons stated below.

to confirm the arbitration award, (2) Paydar's motion to strike Roudi's and Interwest's petition to confirm the arbitration award, and (3) Paydar's petition to vacate the arbitration award, require a determination by this court of the same basic issues. As discussed below, this court finds in favor of Paydar and against Roudi and Interwest on each of the three motions based upon [Cooley's] violation of [rule] 1.7(d)(3)." The court's ruling on Paydar's motion to strike stands and falls on its determination that Cooley suffered an invalidating conflict of interest. Plaintiffs have thoroughly briefed this issue on appeal.

Our own review of Paydar's motion to strike made below does not give us a basis otherwise to affirm the superior court's order. In addition to asserting the joint petition was contrary to Rules of Professional Conduct forbidding dual representation, Paydar argued the court could not "as a matter of law" grant the requested "consolidated relief" on the two assertedly separate arbitration matters, therefore warranting striking the entire joint petition to confirm the arbitration award under sections 436 and 431.10, subdivision (b)(3). Section 436 authorizes a court to "[s]trike out all or any part of any *pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court.*" (§ 436, subd. (b), italics added.) Section 431.10, subdivision (b)(3) defines an "immaterial allegation *in a pleading*" as "[a] demand for judgment requesting relief *not supported by the allegations of the complaint or cross-complaint.*" (Italics added.) "The pleadings are the formal allegations by the parties of their respective claims and defenses, for the judgment of the Court" (§ 420) and for purposes of a motion to strike, "[t]he term 'pleading' means a demurrer, answer, complaint, or cross-complaint." (§ 435.) Interpretation of these statutes presents legal questions subject to de novo review. (See *Ruiz v. Musclewood Investment*

28

*Properties*, *LLC* (2018) 28 Cal.App.5th 15, 24.)  Where materials are not connected with a "pleading," a statutory motion to strike is not available. (*Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 499; accord, *PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682-1683 [motion to strike may challenge portions of causes of action or where a complaint fails to state particular facts, and its use "should be cautious and sparing" so as not to create a "procedural 'line item veto' for the civil defendant"].)

A statutory motion to strike does not lie in a proceeding to enforce an arbitration award.  Petitions to confirm arbitration awards and responses thereto are governed respectively by sections 1285 ["Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award"] and 1285.2 ["A response to a petition under this chapter may request the court to dismiss the petition or to confirm, correct or vacate the award"].  The latter does not authorize a motion to strike.  Even if such a petition was a "pleading" or "demand for judgment" within the meaning of sections 436 and 431.10, neither warrants striking the joint petition in full.  That the petition may have mischaracterized the arbitration proceedings or sought a consolidated award does not make it nonconform to state law, court rules, or a court order.  (§ 436, subd. (b).)  But the petition does not contain false or sham matters; the arbitrator's final award plainly states the inspection matter "was combined" with the derivative matter.  Its award provides Paydar "shall take nothing pursuant to this action *and the prior inspection action*" and ruled in favor of Roudi/Interwest "on their *cross*[-]*complaints . . . .*"  (Italics added.)

29

B. *Paydar's Other Asserted Statutory Violations*

    1. *Litigation Privilege*

Paydar advances other grounds he claims warrant vacating the award. He contends the arbitrator exceeded his powers by imposing attorney fees on him for exercising his right to pursue his claims in arbitration, which right is protected by the Civil Code section 47, subdivision (b) litigation privilege. He argues Interwest and Roudi's counterclaims, which he compares to a SLAPP suit,[8] attacked him for seeking such redress, and "were contrary to public policy protecting a litigant's rights to pursue his claims without the fear of being punished for doing so." He thus argues the fee award is contrary to those statutory rights.

Plaintiffs maintain Paydar forfeited this claim by failing to raise it to the arbitrator, but we need not decide the point. The monetary award for Paydar's breach of fiduciary duty or the shareholder agreement, whether characterized as damages or attorney fees, does not itself contravene the litigation privilege. The arbitrator found Paydar had used his director status for his personal benefit and to Interwest's detriment, disrupting and straining Interwest's limited resources, and breached the shareholder agreement by failing to arbitrate in good faith, warranting damages in the form of attorney fees and costs. These conclusions based on contested issues of law or fact are not reviewable for error. (*Richey v. AutoNation, Inc.*, *supra*, 60 Cal.4th at p. 916.)

Paydar's sole cited authority, *Moore v. Conliffe* (1994) 7 Cal.4th 634 does not support a different conclusion. *Moore* addressed whether communications in connection with private arbitration proceedings are

---

8    SLAPP stands for a strategic lawsuit against public participation. (See *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2.)

protected by the litigation privilege. (*Id*. at p. 640.) *Moore* concluded they were, and the privilege protected witnesses who testified in such proceedings from subsequent tort actions based on that testimony. (*Id*. at p. 644 ["Because such a proceeding is designed to serve a function analogous to— and typically to eliminate the need to resort to—the court system [citation], the need for an absolute privilege to foster the giving of complete and truthful testimony is as vital in the private contractual arbitration setting as it is in a court proceeding"].) We fail to see how *Moore* establishes that the arbitrator's damages award in this case violates the privilege. If we were to conclude that awarding Roudi and Interwest damages for breach of fiduciary duty or breach of the shareholder agreement somehow punished Paydar for pursuit of his claims in arbitration in violation of the litigation privilege, virtually any damages award on a defendant's counterclaim brought in a legal proceeding could be said to "punish" the losing plaintiff for initiating the proceeding.

### 2. *Corporations Code Inspection Rights*

Paydar further contends the award violates his "protected statutory rights to inspect the corporation's books and records as a shareholder under Corporations Code section 1601 and as a director under Corporations Code section 1602."[9] According to Paydar, the counterclaims in arbitration

---

[9]    Corporations Code section 1601, subdivision (a)(1) provides in part: "The accounting books, records, and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation . . . shall be open to inspection at the corporation's principal office in this state, or if none, at the physical location for the corporation's registered agent for service of process in this state, upon the written demand on the corporation of any shareholder or holder of a voting trust certificate at any reasonable time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate."

attacked those rights by mischaracterizing them as pretextual or taken in bad faith.  He additionally contends the award contravenes public policy expressed in Corporations Code section 1604, which he says allows only the shareholder exercising inspection right, not the opposing parties, to recover attorney fees incurred to enforce those rights.[10]  Thus, Paydar argues the court properly vacated the award because according finality to the arbitrator's decision is incompatible with the protection of those statutory rights.

As stated, an arbitrator's decision may be subject to judicial review when the arbitrator "issue[s] an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey v. AutoNation, Inc.*, 60 Cal.4th at p. 916; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1362 ["Arbitration awards have been reviewed to determine whether the arbitrators complied with statutes conferring unwaivable rights"].)  The rule is "limited and exceptional . . . ." (*Moncharsh*, *supra*, 3 Cal.4th at p. 32; *Board of Education v. Round Valley Teachers Assn.*, *supra*, 13 Cal.4th at p. 276.)  "Without an explicit legislative expression of *public* policy . . . courts should be reluctant to

---

Corporations Code section 1602 provides in part:  "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director and also of its subsidiary corporations, domestic or foreign."

[10]  Corporations Code section 1604 provides:  "In any action or proceeding under Section 1600 or Section 1601, if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification, the court may award an amount sufficient to reimburse the shareholder or holder of a voting trust certificate for the reasonable expenses incurred by such holder, including attorneys' fees, in connection with such action or proceeding."

invalidate an arbitrator's award on this ground. The reason is clear: the Legislature has already expressed its strong support of private arbitration and the finality of arbitral awards . . . . Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Moncharsh*, at p. 32, italics added; *SingerLewak LLP v. Gantman*, *supra*, 241 Cal.App.4th at pp. 610, 620 [courts refuse to apply the exception for statutory violation absent an explicit legislative expression of public policy].) Where the sole issue is merely an alleged error in the interpretation or application of the law governing the claim properly subject to arbitration, the exception is inapplicable. (See *Richey*, at p. 917; *SingerLewak*, at p. 620.) "So long as a disagreement is ' "*within the scope of the controversy submitted to the arbitrator*[,] '[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.' " ' " (*State Farm Mutual Automobile Insurance Company v. Robinson* (2022) 76 Cal.App.5th 276, 284.)

Do the laws concerning corporate records inspections and attorney fee awards to shareholders enforcing those rights evince settled *public* policies overriding the strong presumption in favor of arbitration? Do the laws protect *unwaivable* rights? Paydar does not address these points with regard to sections 1601 and 1602 of the Corporations Code. He refers to an "express public policy" in Corporations Code section 1604, but we see no such policy mentioned in the statute and he cites no authority from which we can conclude this provision creates unwaivable rights, much less important *public* rights or policies. (Compare *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 669, 670-672 [arbitrator's decision that claim was time-barred was a clear error of law; the legal error meant an employee was deprived of a hearing on the merits of an unwaivable statutory

employment claim under the California Fair Employment and Housing Act and thus the award was properly vacated]; *SingerLewak LLP v. Gantman*, *supra*, 241 Cal.App.4th at p. 622 [Business and Professions Code section 16600 evinces a settled legislative policy in favor of open competition and employee mobility protecting Californians and the " ' "important legal right of persons to engage in businesses and occupations of their choosing" ' "; appellate court noted case law indicated it is an unwaivable right, but found the code itself created an exception to the policy and the arbitration award thus did not contravene a public policy]; *Ahdout v. Hekmatjah, supra*, 213 Cal.App.4th at p. 39 [Legislature expressly articulated public policy behind prohibition on unlicensed contractor work to protect the public from the hazards of shoddy construction work].)

At bottom, Paydar's argument is an attack on the arbitrator's remedy, his award of damages. But there is no basis to conclude the damages award was not authorized by the parties' shareholder agreement or the remedy not rationally related to the breach. (See *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 381 & fn. 12 [remedy imposed by the arbitrator "must be related in a rational manner to the breach"; "[an] award is rationally related to the breach if it is aimed at compensating for, or alleviating the effects of, the breach"].) "We have no authority to review the reasoning by which the arbitrator reached the conclusions [he] reached [citation], and that includes the amount of . . . damages to be awarded." (*Shahinian v. Cedars-Sinai Medical Center* (2011) 194 Cal.App.4th 987, 1001.) Paydar "may be unhappy with the result, but [he] agreed to 'final and binding' arbitration, and that is what [he] got." (*Ibid.*)

34

## DISPOSITION

The order granting Paydar's motion to strike plaintiffs' petition to confirm the arbitration and vacate the arbitration award is reversed. The superior court is directed to enter a new order denying Paydar's motions and granting Roudi and Interwest's petition to confirm the award. Roudi and Interwest shall recover costs on appeal.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.