Filed 10/26/22  Leeor Builders v. Forehand CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| LEEOR BUILDERS, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LEROY FOREHAND,<br><br>    Defendant and Respondent. | B316785<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV15470)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br>[NO CHANGE IN JUDGMENT] |

COURT:*

IT IS ORDERED the opinion in the above-entitled matter filed on October 6, 2022, be modified as follows:

1. Starting on page 14 through page 15, delete the paragraph beginning "Second, for the first time on appeal," and replace as follows:

"Second, Leeor asserts that the Forehands' home was owned by LeRoy and Elizabeth as trustees of the Forehand

Trust, and that under Probate Code section 15620, the signatures of both were required to 'activate a provision on behalf of the trust.' We find this argument without merit. Leeor entered into an agreement with Elizabeth and LeRoy as individuals, not as trustees to the Forehand Trust. Indeed, Leeor's complaint named LeRoy in his individual capacity, not as trustee. In short, we conclude the parties had a valid arbitration agreement that LeRoy was entitled to enforce."

2. Footnote 12 is renumbered as footnote 11, and footnote 13 is renumbered as footnote 12.

Except as provided above, the petition for rehearing is denied.

There is no change in the judgment."

_____

*MANELLA, P. J.  COLLINS, J.   CURREY, J.

2

Filed 10/6/22  Leeor Builders v. Forehand CA2/4 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LEEOR BUILDERS, INC., | B316785 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 21STCV15470) |
| LEROY FOREHAND, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed.

Law Office of Yossi Noudel and Yossi Noudel for Plaintiff and Appellant.

Retz & Aldover and Kirk J. Retz for Defendant and Respondent.

## INTRODUCTION

Respondent LeRoy Forehand and his wife Elizabeth entered into a contract with appellant Leeor Builders, Inc. for home improvements.[1] The contract contained an arbitration provision and a box on the first page requiring the initials of the "Owner" in order for the arbitration provision to be effective. Elizabeth's initials appear in the box, as well as on the page containing the language of the arbitration provision, where initials of "Direct Contractor" also appear. In July 2020, after Elizabeth had passed away, LeRoy brought a demand for arbitration, initially seeking $299,999. Over Leeor's objections, both the trial court and the Arbitrator ruled the arbitration provision was enforceable. In a closing brief submitted in the arbitration, LeRoy sought additional damages. The Arbitrator ultimately awarded LeRoy $869,000 in damages, plus costs, for a total of $902,749.38. The Arbitrator expressly found that Leeor had been on notice of the claims and of the additional damages sought. The trial court confirmed the award, rejecting Leeor's argument that in exceeding the original demand, the Arbitrator's award was fundamentally unfair.

On appeal, Leeor contends the court erred in finding the parties had agreed to arbitrate because "Owner" necessarily meant both Elizabeth and LeRoy, and thus

---

[1] Because they share a surname, we refer to LeRoy and Elizabeth by their first names.

Elizabeth's initials alone were insufficient to render the arbitration provision effective.  Leeor further contends the court impermissibly deferred to the Arbitrator on the question whether there existed an agreement to arbitrate. Finally, Leeor contends the court erred in confirming an award that substantially exceeded the original demand.

We reject Leeor's construction of the contract (which it drafted) as requiring both LeRoy's and Elizabeth's initials to render the arbitration provision effective.  Accordingly, we agree with both the trial court and the Arbitrator that Elizabeth's initials were sufficient.  Additionally, because both the trial court and the Arbitrator concluded the parties had agreed to arbitrate, we need not address whether the court erred to the extent it deferred the issue of the existence of an arbitration agreement to the Arbitrator.[2]  Finally, we conclude the court was required to accept the Arbitrator's factual finding that Leeor was on notice of the damages sought and discern no fundamental unfairness in the award. We therefore affirm.

## STATEMENT OF RELEVANT FACTS
### A.    *The Parties Enter into an Agreement*
In June 2018, LeRoy and Elizabeth Forehand entered into a "Home Improvement Contract" with Leeor.  The top of the first page of the agreement stated it was an

---

[2]    Similarly, we need not address Leeor's challenge to the court's alternative holding that LeRoy could enforce any arbitration agreement between Leeor and Elizabeth.

"AGREEMENT BETWEEN DIRECT CONTRACTOR AND PROPERTY OWNER."  Beneath this statement on the left-hand side appeared a stylized logo with the words "Greener Solution Group."[3]  To the right of this logo was the word "And" followed by six blank lines, underneath which were instructions about what information was to be filled in the blanks.  The first blank line was for "Property Owner's Name," and "Leroy [*sic*] & Elizabeth Forehand" was handwritten in that blank.

Near the bottom of the first page was a box containing the following text: "ARBITRATION [¶] OWNER: Initial this box if you agree to arbitration.  Review the 'Arbitration of Disputes' section attached."  The box was large enough to fit only one set of initials, and contained the initials "EF."

Underneath the box was a blank line over text stating: "(Owner Sign Here – Read notice on Arbitration, Mechanics Lien Warning)."  Elizabeth's signature appeared in this blank.  Below that was another blank line over text stating: "(If more than one Owner, please Sign Here)."  LeRoy's signature appeared here.

The "Arbitration of Disputes" section provided, in relevant part, that all claims relating to the contract would "be settled by binding arbitration in accordance with the construction industry arbitration rules of the American

---

[3]     Greener Solution Group is Leeor's DBA.

4

Arbitration Association [AAA]."[4]  Near the bottom of the provision was a line stating, "I agree to arbitration" followed by an "x," followed by an underlined blank space, under which "(Direct Contractor's Initials)" was written.  The initials "OA" were written in that blank.[5]  On the same line was another statement of "I agree to arbitration" followed by an "x" and an underlined blank space, under which "(Owner's Initials)" was written.  The initials "EF" were written in that blank.  Below the space for initials, the contract provided that "in the event that Contractor and Owner have not each initialed the arbitration provision above, then it shall be conclusively agreed without a subsequent written agreement by all parties, that neither party agrees to arbitrate and the arbitration of disputes provision shall not be deemed to be a part of this agreement."

### B.  *LeRoy's Demand for Arbitration; Arbitration Proceedings[6]*

In July 2020, LeRoy filed a demand for arbitration, alleging Leeor should be liable for construction deficiencies in the work it performed at his house, for failing to complete

---

[4]     The entirety of the "Arbitration of Disputes" section was printed in bold, capital letters, omitted here for readability.

[5]     OA may have stood for "Oshri Azoulay," a salesperson working for Leeor.

[6]     Except where noted, the facts in this section are taken from a recitation in the Arbitrator's July 2021 Final Award.

the work required in the contract, and for committing elder abuse. The demand sought $299,999 in damages.

In September 2020, the Arbitrator held a preliminary hearing and issued a scheduling order. According to an e-mail from the Arbitrator, Leeor objected to AAA's jurisdiction and the Arbitrator acknowledged Leeor's participation in arbitration would not be deemed a waiver of its right to object to jurisdiction; the Arbitrator encouraged Leeor to bring a motion to dismiss as soon as possible, either before the superior court or the Arbitrator. LeRoy filed a Statement of Claims, detailing his claims and damages.

In November 2020, Leeor filed a "Response to the Statement of Claims," asserting numerous affirmative defenses. Leeor also attempted to file a counterclaim including several third parties, but it was rejected as untimely and noncompliant with AAA rules. The Arbitrator held another preliminary hearing, and issued a second scheduling order, extending deadlines to comply with the initial scheduling order.

In April 2021, LeRoy filed a motion to bar Leeor from introducing evidence at the arbitration hearing because Leeor had failed to comply with the Arbitrator's scheduling orders, including directives to produce documents and identify witnesses. Leeor opposed the motion on April 19 and also challenged AAA's jurisdiction to conduct the arbitration. On April 20, 2021, the Arbitrator denied LeRoy's motion on the condition that Leeor produce documents by a certain date. Leeor's challenge to AAA's

jurisdiction was bifurcated, to be addressed at the outset of the April 28, 2021 arbitration hearing.  Leeor subsequently brought a motion to dismiss before the Arbitrator on April 28.  That motion was denied.

### C.    *Leeor's Complaint; Court Proceedings*

On April 23, 2021, nine months after LeRoy had petitioned for arbitration and less than a week before the scheduled arbitration hearing, Leeor filed a complaint in the superior court against "LEROY FOREHAND, an individual" and others.  The complaint alleged that although the agreement signed by Leeor and the Forehands contained an arbitration provision, it was ineffective because LeRoy had failed to initial it.  The complaint asked the court to enjoin the arbitration and declare that the agreement did not provide for arbitration.  Leeor also alleged that LeRoy breached the parties' agreement by filing for arbitration.[7]

Five days later, Leeor filed an ex parte application for a temporary restraining order and order to show cause to enjoin the arbitration, arguing that LeRoy's failure to initial the arbitration provision conclusively established the parties did not agree to arbitrate.  LeRoy disputed Leeor's purported construction of the agreement, contending the provision required only one set of initials each -- of an owner and of a

---

[7]    The remainder of the complaint alleged essentially that other contractors and sureties were responsible for the damages LeRoy claimed to have sustained, and demanded indemnity or contribution.

contractor. LeRoy further argued that to the extent the agreement could be read to require more than one owner to initial the arbitration provision, the contract was ambiguous and must be construed against Leeor. The court denied Leeor's application, finding an "unreasonable delay in seeking relief," and further concluding that Leeor had failed to show a likelihood of success on the merits on its claim that it was not "bound by an arbitration agreement that it signed."

In May 2021, following three days of the arbitration evidentiary hearing, LeRoy moved to compel arbitration in lieu of answering Leeor's complaint. Leeor opposed the motion, again arguing LeRoy's failure to initial the arbitration provision rendered it ineffective. Included with the opposition was a declaration from Oshri Azoulay, a Leeor salesperson, who averred that LeRoy "did not want to initial the arbitration clause because he indicated that he does not trust or want that type of proceeding[]." Directly contradicting this assertion, LeRoy submitted a declaration stating, "I agreed to arbitrate all disputes with Leeor Builders when I signed the contract . . . ." Of Azoulay's assertion that LeRoy did not "trust or want" arbitration, LeRoy stated, "This is false. I never said that I did not want to arbitrate."

In July 2021, the court granted LeRoy's motion to compel, finding that "[t]he clause at issue does not require that 'all' owners initial the provisions to create an enforceable agreement but only that there be an initial from

. . . 'each' of the following parties: the 'contractor' and 'owner.' · That only one of the owners needs to initial the arbitration agreement is reinforced by the signature lines on the first page of the contract. The first signature line indicating 'Owner Sign Here' is followed by 'Read notice on Arbitration, Mechanics Lien Warning.' In contrast, the signature line for an additional owner does not direct the second owner's attention to the arbitration provision. Clearly, one signature on 'each' side of the contract is sufficient to create an enforceable arbitration provision."

### D. *Arbitration Award; Petition to Confirm*

According to the Arbitrator's Final Award, the evidentiary hearing took place on April 28, 29, and 30, and May 27, 2021. On May 28, 2021, LeRoy filed his closing brief. On June 2, Leeor filed its closing brief.[8] The arbitration hearing was "closed" on June 8, 2021. The Arbitrator, as had the trial court, rejected Leeor's argument that no agreement had been formed. The Final Award further found that Leeor was sufficiently placed "on notice of the nature of each claim and the damages sought." Specifically, the Arbitrator found "[Leeor] was served with a detailed Statement of Claims as well as expert reports giving [Leeor] more than adequate notice of each claim being brought by [LeRoy] and ample opportunity to defend those claims." The Arbitrator also referenced LeRoy's "Closing

---

[8]     Neither party's brief is in the record.

9

Brief" in which LeRoy "correctly restated all claims as traditional causes of action." The Final Award found Leeor liable to LeRoy for $869,000 plus costs, for a total of $902,749.38.

In August 2021, LeRoy petitioned to confirm the arbitration award and enter judgment. Leeor opposed the petition, arguing the court could not enter judgment because the parties had not agreed to arbitrate, and further contending that an award significantly in excess of the original demand was fundamentally unfair and violated due process.[9] LeRoy countered that "[b]oth in opening statements and in written closing arguments, Mr. Forehand asked for approximately $900,000 in damages," and noted that the Arbitrator had specifically found Leeor was "'on notice of the nature of each claim and the damages sought.'"

The court granted LeRoy's petition. As to the parties' agreement to arbitrate, the court noted that it had previously found the arbitration provision enforceable. It further observed that the Arbitrator had "explicitly addressed and firmly rejected" the challenge to the enforceability of the arbitration provision. As to the award exceeding LeRoy's initial demand, the court noted the Arbitrator's finding that LeRoy gave written notice of the increased demand in his closing brief before the close of arbitration, which satisfied AAA rules. The court further

---

[9]     While Leeor made other arguments, it expressly abandons them on appeal.

10

noted that the Arbitrator's Final Award expressly found that the claim was sufficiently pled "'and placed [Leeor] on notice of each claim and the damages sought,'" noting that LeRoy "served 'a detailed Statement of Claims as well as expert reports giving [Leeor] more than adequate notice of each claim,'" and that Leeor had "'ample opportunity to defend against those claims.'" Finally, the court rejected Leeor's argument that in exceeding the original demand, the Arbitrator's Award was fundamentally unfair and violated due process. The court entered judgment in November 2021. Leeor timely appealed.[10]

---

[10] On appeal, Leeor requests that we judicially notice: (1) that the arbitration resulting in the Final Award was conducted with AAA under the Regular Track Procedures of the Construction Industry Arbitration Rules; (2) that the rules located at AAA's website are also in the record; (3) the text of AAA rule R-6; (5) that LeRoy filed an arbitration demand in July 2020 against Leeor; (6) that the demand sought damages of $299,999; (7) that the demand was not modified to increase the amount demanded; (8) that the Award was for $902,749.38; (12) a printout purporting to be a public property record for LeRoy's house; (13) a quit-claim deed relating to LeRoy's house; (14) a recorded affidavit relating to LeRoy's house; and (15) that from 1990 to 2019, LeRoy's house was owned by LeRoy and Elizabeth as "trustees of the FOREHAND TRUST." (Leeor's request intentionally omitted requests 4, 9, 10, and 11.) LeRoy has not opposed Leeor's request. We grant Leeor's first and third requests relating to the rules of the arbitration and deny the remainder. We deny requests 5, 6, and 8 because the information appears in the record already. We deny request 7 because Leeor has failed to provide an accurate source from which we can
*(Fn. is continued on the next page.)*

11

## DISCUSSION

### A.    *The Agreement Contained an Enforceable Arbitration Provision*

"Where the evidence is not in conflict, the appellate court independently interprets the language of a written contract." (*Rael v. Davis* (2008) 166 Cal.App.4th 1608, 1617.)  The parties' agreement provided that "in the event that Contractor and Owner have not each initialed the arbitration provision above, then it shall be conclusively agreed without a subsequent written agreement by all parties, that neither party agrees to arbitrate and the arbitration of disputes provision shall not be deemed to be a part of this agreement."  It is undisputed that while both Leeor's representative and Elizabeth initialed the arbitration provision, LeRoy did not.  Leeor contends that "'Owner'" therefore did not initial the provision because "'Owner' is defined on the first page as: 'Le Roy [*sic*] & Elizabeth Forehand.'"  We disagree.

The trial court rejected Leeor's contention: "The clause at issue does not require that 'all' owners initial the provisions to create an enforceable agreement but only that there be an initial from . . . 'each' of the following parties: the 'contractor' and 'owner.' That only one of the owners needs to initial the arbitration agreement is reinforced by the signature lines on the first page of the contract.  The first

---

ascertain this information.  We deny requests 2, 12, 13, 14, and 15 because the documents and information Leeor asks us to notice are irrelevant to this appeal.

12

signature line indicating 'Owner Sign Here' is followed by 'Read notice on Arbitration, Mechanics Lien Warning.' In contrast, the signature line for an additional owner does not direct the second owner's attention to the arbitration provision. Clearly, one signature on 'each' side of the contract is sufficient to create an enforceable arbitration provision." We agree. We note also that the second signature line contained the instruction "If more than one Owner, please Sign Here." The phrase "more than one Owner" implied that "Owner" denoted a single person. If "Owner" were defined to mean both Elizabeth and LeRoy, "more than one Owner" would be nonsensical. (Civ. Code, § 1644 ["The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed"].) Additionally, the text box on the first page of the agreement for the "Owner" to indicate agreement to arbitration was large enough to permit only one set of initials. Considering the agreement as a whole, we conclude the initials of only one Owner were sufficient to render the arbitration provision effective. (Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].)

To the extent the agreement was ambiguous as to who was required to initial the arbitration provision, such

13

ambiguity is construed against the drafter. (*People ex rel. Department of Public Works v. Ward* (1968) 258 Cal.App.2d 15, 21 ["An ambiguity is to be construed more strongly against the party who prepared the document"]; Civ. Code, § 1654 ["In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist"].) Nevertheless, Leeor contends two pieces of extrinsic evidence demonstrate both LeRoy and Elizabeth were required to initial. First, Leeor claims we must consider "the undisputed words of Respondent: he didn't want to agree to binding arbitration, and Appellant acceded to that by proceeding on the job." This flatly misstates the record. LeRoy declared unequivocally that he "agreed to arbitrate all disputes with Lessor Buiders when I signed the contract," and characterized Azoulay's contrary assertion as "false."

Second, for the first time on appeal, Leeor asserts that the Forehands' home was owned by LeRoy and Elizabeth as trustees of the Forehand Trust, and that under Probate Code section 15620, the signatures of both were required to "activate a provision on behalf of the trust." By failing to raise this argument below, Leeor has forfeited it. (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 26 ["[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which

14

could have been but were not presented to the trial court"].)[11] In short, we conclude the parties had a valid arbitration agreement that LeRoy was entitled to enforce.

### B. *The Court Did Not Err in Confirming the Award*

Leeor complains that LeRoy's arbitration demand alleged $299,999 in damages, yet the arbitrator awarded him $902,749.38. The trial court accepted the Arbitrator's finding that LeRoy gave sufficient notice of his increased demand.[12] Leeor argues: (1) the court erred "in relying solely

---

[11] Even were we to consider this argument, we would find it without merit. Leeor entered into an agreement with Elizabeth and LeRoy as individuals, not as trustees to the Forehand Trust. Indeed, Leeor's complaint named LeRoy in his individual capacity, not as trustee.

[12] AAA rule R-6 is entitled "Changes of Claim or Counterclaim" and provides:

"(a) A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties.

"(b) Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed no

*(Fn. is continued on the next page.)*

15

on the arbitrator's findings that there was ample notice with no other evidence"; and (2) even if Leeor was given adequate notice of the increased demand, the Arbitrator's Award "establishes fundamental unfairness." We reject the contentions.

### 1. The Court Was Bound by the Arbitrator's Finding That Leeor Was on Notice of LeRoy's Increased Demand

"[I]t is within the 'powers' of the arbitrator to resolve the entire 'merits' of the 'controversy submitted' by the parties. [Citation.] Obviously, the 'merits' include all the contested issues of law and fact submitted to the arbitrator for decision." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28.) Here, the Arbitrator expressly found that Leeor had been placed "on notice of the nature of each claim and the damages sought," referencing the statement of claims, expert reports, and LeRoy's closing brief. In so doing, the Arbitrator necessarily found that LeRoy had given sufficient notice of his claims and damages under AAA rules. "[C]ourts are bound by the arbitrator's findings of fact." (*Meat Cutters Local No. 459 v. Olson Bros., Inc.* (1960) 186 Cal.App.2d 200, 203.) Not only was the court not required to identify "other evidence" in support of the Arbitrator's finding as Leeor suggests, it was bound by such finding.

---

new or different claim or counterclaim may be submitted without the arbitrator's consent."

16

## 2. The Judgment Is Not Fundamentally Unfair

As he did below, Leeor relies on *Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125 (*Emerald Aero*), to argue that even if LeRoy gave proper notice of the increased demand, the Arbitrator's Award was fundamentally unfair. Leeor requests we either reverse the judgment or reduce the amount awarded to $299,999. We decline to do so.

In *Emerald Aero*, after the plaintiffs' initial arbitration demand of $1,000,000 was served, the arbitration was stayed for the defendant's criminal proceedings, and the defendant's attorney asked to withdraw. (*Emerald Aero*, *supra*, 9 Cal.App.5th at 1132-1134.) Twenty months after the initial demand was filed, a one-day, telephonic evidentiary hearing was held. (*Id.* at 1135.) A day before this hearing, plaintiffs served on the Arbitrator and the defendant -- but not his counsel -- an e-mail stating: "'Attached please find [plaintiffs'] default prove up brief for tomorrow's hearing along with a supporting declaration and proof of service.'" (*Ibid.*) Nothing in the body of the e-mail indicated plaintiffs had added additional claims or increased their demand. (*Id.* at 1142.) However, the attachment provided that plaintiffs were now seeking over $10 million in damages, as well as three times that amount in punitive damages not previously sought. (*Id.* at 1135.) The Arbitrator awarded plaintiffs over $30 million, and the trial court confirmed the award. (*Id.* at 1130.)

17

The appellate court reversed, holding that the plaintiffs' submission of their increased demand violated AAA rules because "[r]easonably understood, the notice required under AAA rule R-6 means providing the opposing party with the time and opportunity to review and understand the contents of the notice, and the opportunity to respond to the notice.[13]  Under the circumstances here, attaching a brief to an e-mail less than 24 hours before the merits hearing did not constitute notice calculated to apprise the opposing party of a new and substantially increased monetary claim, nor did it provide the opposing party with a fair opportunity to assert a challenge to the new punitive damage claim." (*Emerald Aero*, *supra*, 9 Cal.App.5th at 1141-1142.)  The court further rejected the plaintiffs' argument that the late notice did not prejudice the defendant because he had already decided not to participate in the evidentiary hearing, finding that "the record also supports that if [defendant] had been provided reasonable prior notice that plaintiffs were seeking $30 million in punitive damages, he would have likely reconsidered this decision by retaining a new attorney or appearing at the hearing to at least notify the Arbitrator that punitive damages had never before been part of plaintiffs' claim." (*Id.* at 1142.)  The court concluded that "[o]n the record before us, plaintiffs' counsel took unfair advantage of the situation by

---

[13]     The AAA rule R-6 considered by the *Emerald Aero* court was substantively identical in pertinent part to the rule R-6 at issue here. (*Emerald Aero*, *supra*, 9 Cal.App.5th at 1140-1141.)

making a last-minute demand for more than $30 million in punitive damages." (*Ibid.*)

Here, by contrast, nothing suggests Leeor's counsel did not receive and review LeRoy's closing brief, or respond to it in its own closing brief, filed five days later. LeRoy's brief was filed 11 days before the close of arbitration, yet nothing in the record indicates Leeor sought to reopen the evidentiary hearing to rebut LeRoy's increased damages number; nor did he claim to have any evidence that could do so. Moreover, the Arbitrator expressly found LeRoy "placed [Leeor] on notice of the nature of each claim and the damages sought," noting Leeor "was served with a detailed Statement of Claims as well as expert reports giving [Leeor] more than adequate notice of each claim being brought by [LeRoy] and ample opportunity to defend those claims." Leeor had "the time and opportunity to review and understand" LeRoy's claims and damages request and "the opportunity to respond . . . ." (*Emerald Aero*, *supra*, 9 Cal.App.5th at 1141.) The instant circumstances are thus materially different from those found unfair in *Emerald Aero*, and they require neither reversal nor reduction of the judgment.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, P. J.


We concur:


COLLINS, J.


CURREY, J.


20